**Edward M. BERNSTEIN, Esq., and Carl F. Piazza, Esq., individually and doing business as Bernstein & Piazza, Plaintiffs,**

v.

**GTE DIRECTORIES CORP., a Delaware corporation, GTE Sales Corp., a Delaware corporation, GTE Directory Service Corp., a Delaware corporation and Centel, John Does I through X, and John Doe Corporations I through X, Defendants.**

No. CV LV 85–447 RDF.

United States District Court,
D. Nevada.

April 16, 1986.

Bernstein & Piazza by Edwd. M. Bernstein, Las Vegas, Nev., for plaintiffs.

Edwards, Hunt & Hale by Floyd A. Hale, Las Vegas, Nev., for all defendants except Centel who was not served.

## PARTIAL SUMMARY JUDGMENT

ROGER D. FOLEY, Senior District Judge.

## FACTS

Plaintiffs Edward M. Bernstein and Carl F. Piazza are practicing attorneys in Las Vegas, Nevada. Defendants GTE Directories Corp., GTE Sales Corp., and GTE Directory Services Corp. (collectively GTE), are Delaware corporations licensed to do business in Nevada and are responsible for the compilation and issuance of the Centel telephone directory for Clark County, Nevada. Prior to July 1984, plaintiffs entered into an agreement with GTE to place plaintiffs' names, telephone listings and display advertisement in the July 1984 and January 1985 telephone directories. Both directories were printed and circulated. However, plaintiff Piazza's name was omitted from the white pages of both directories, and the yellow pages of the January 1985 directory failed to contain the names, listings and display advertisement of either plaintiff.

The front page of the written agreement states that the agreement is in accordance with the terms on the reverse side. It also states: "ADVERTISER ACKNOWLEDGES THAT HE/SHE RECEIVED A DUPLICATE COPY OF THIS AGREEMENT AND HAS READ ITS TERMS AND CONDITIONS ON THE REVERSE...." The reverse side of the agreement, under the heading "TERMS AND CONDITIONS," states in bold letters:

8. GTEDC shall not be liable to the advertiser for damages resulting from failure to include in the directory any item of advertising provided in this agreement or from errors in the advertising printed in the directory, whether or not occasioned by the negligence of GTEDC, in excess of the amount paid by the advertiser for the item(s) of advertising shown on the face of this application with respect to which the error or omission occurred.

GTE does not contest the fact that plaintiffs' names and listings were omitted from the directories, but based upon the above provision seeks partial summary judgment limiting its liability to the amount plaintiffs paid for the advertising. Plaintiffs claim the agreement is unenforceable. They claim the limitations clause makes the contract an unconscionable adhesion contract which violates public policy. Plaintiffs believe they are entitled to damages for financial loss in excess of $10,000.

## ANALYSIS

Although this issue has not been addressed by the Nevada Supreme Court, a significant number of other jurisdictions have addressed the identical issue that is presented in this case. The majority of those cases have held that a telephone company may, by contract, limit its liability for omissions and mistakes in the yellow pages so long as it does not seek immunity from gross negligence or wilful misconduct. *Wille v. Southwestern Bell Telephone Co.,* 219 Kan. 755, 549 P.2d 903 (1976). In *Wille,* an operator of a heating and air conditioning sales and service business brought an action for damages against the telephone company for omission of a portion of the plaintiff's ad from the yellow pages. The court held the mere fact that there was a disparity of bargaining power did not make the agreement unconscionable. The court held that the limitations clause was neither unconscionable nor inequitable because the clause was phrased in clear and concise language, was set out in clearly legible type on the reverse side of

the agreement, and the plaintiff was an experienced businessman who had advertised in the yellow pages for 13 years.

In *University Hills Beauty Academy v. Mountain States Telephone and Telegraph Co.*, 38 Colo.App. 194, 554 P.2d 723 (1976), a beauty school brought an action for damages resulting from a negligent omission of a listing in a telephone directory. The court held that the limitation of liability clause was not so unreasonable as to shock the conscience when there were other directories and publications which the plaintiffs could have used and the omission left the plaintiff in the same position it would have been in had he made no contract at all. The court reasoned that to void the limitation of liability clause would make the telephone company an insurer against consequential damages by advertisers. The court said such a situation would be inequitable because the premiums, in the form of advertising billings, are disproportionately low compared to the magnitude of the potential liability in claimed damages.

Similarly in *Mendel v. Mountain States Telephone & Telegraph Co.*, 117 Ariz. 491, 573 P.2d 891 (Ariz.Ct.App.1978), the court held that absent a demonstration of bad faith, fraud, or willful or wanton conduct by the telephone company, the limitation of liability, for errors or omissions contained in the contract for directory advertising, was reasonable and did not violate public policy. Several courts which have decided the issue have cited, with approval, 14 *Williston on Contracts*, 3d Ed., § 1632, which states:

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a

profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

*Mendel*, 573 P.2d at 892–93; *University Hills Beauty Academy*, 554 P.2d at 726; *Wille*, 549 P.2d at 909.

Plaintiffs claim the contract in this case is an unenforceable adhesion contract and rely upon the definition of an adhesion contract found in *Obstetrics and Gynecologists William G. Wixted, M.D., Patrick M. Flanagan, M.D., William F. Robinson, M.D. Ltd., v. Pepper*, 693 P.2d 1259 (Nev. 1985). In *Pepper*, a medical clinic required all patients to sign an agreement that all disputes between the parties would be settled by arbitration and that the parties expressly waived the right to trial. The court held that the agreement was unconscionable. The court defined an adhesion contract as follows:

> An adhesion contract has been defined as a standardized contract form offered to consumers of goods and services essentially on a "take it or leave it" basis, without affording the consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract. *Miner v. Walden*, 101 Misc.2d 814, 422 N.Y.S.2d 335, 337 (N.Y.Sup.Ct. 1979). The distinctive feature of an adhesion contract is that the weaker party has no choice as to its terms.

693 P.2d at 1260.

The contract in this case appears to fall within this definition. However, the court in *Pepper* stated that an adhesion contract need not be unenforceable if certain criteria are satisfied. The court said at page 1261:

> An adhesion contract need not be unenforceable if it falls within the reasonable expectations of the weaker or "adhering" party and is not unduly oppressive. *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165, 172–173 (1981). However, courts will not enforce against an adhering par-

ty a provision limiting the duties or liabilities of the stronger party absent plain and clear notification of the terms and an understanding consent.

The liability limitations clause should be upheld in this case. The plaintiffs are practicing attorneys and should be familiar with the consequences of contractual agreements. Plaintiffs have provided no evidence to suggest that they misunderstood the terms of contract or that the contract fell outside their expectations. Similarly there is no evidence that plaintiffs objected to the terms of the contract. The limitations clause was written in bold letters on the reverse side of the agreement form and was written in clear and concise language. The front page of the agreement specifically stated that the agreement was in accordance with the terms on the reverse side of the agreement. Additionally there are other modes of advertising of which the plaintiffs could have availed themselves. The limitations clause does not seek immunity from gross negligence or wilfull misconduct and is not so one-sided and unfair as to shock the conscience.

This conclusion is in accordance with the vast majority of jurisdictions. Courts in at least twenty states have considered this issue and have upheld clauses that are nearly identical to the clauses in this case. This court recognizes that at least three other states have invalidated such clauses; however, the facts in this case compel this court to uphold the limitations clause. Partial summary judgment should be granted limiting GTE's liability to the amount the plaintiffs paid for the advertising.

This order constitutes this court's findings of fact and conclusions of law.

### ORDER AND JUDGMENT

WHEREFORE, IT IS ORDERED that defendants' motion for partial summary judgment is GRANTED. Defendants' liability is thus limited to the amount plaintiffs' paid the defendants for the items of advertising listed on the contract.