573 P.2d 891

**Julius MENDEL and Lillian R. Mendel, husband and wife, Appellants,**

**v.**

**The MOUNTAIN STATES TELEPHONE & TELEGRAPH CO., aka Mountain Bell, a Foreign Corporation, Appellee.**

**No. 2 CA–CIV 2545.**

Court of Appeals of Arizona, Division 2.

Oct. 24, 1977.

Rehearing Denied Dec. 5, 1977.

Review Denied Jan. 10, 1978.

Ronald W. Sommer, Tucson, for appellants.

Bilby, Shoenhair, Warnock & Dolph, P.C. by Barry M. Davis, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

Appellants operate a business in Pima County, Arizona known as Western Television, which sells and services electronic entertainment equipment. Since 1948 they have advertised in the yellow pages as an authorized retailer and servicer of Motorola appliances. In the 1973–1974 telephone directory, three ads which identified appellants' business as an authorized Motorola dealer and service representative were erroneously omitted from the yellow pages. These ads cost appellants $55.80 per year.

The written contract between the parties concerning these advertisements contained the following provision:

> "9. In case of error in the advertisement as published, or in case of the omission of all or any part of the advertisement from publication, the Telephone Company's liability, if any, shall be limited to a pro rata abatement of the charge paid to the Telephone Company for such advertisements in the same proportion that the error or omission reduces, if at all, the value of the entire advertisement, but in no event shall such liability exceed the amount payable to the Telephone Company for said advertisement during the service life of the directory in which the error or omission occurs."

Appellants filed this suit for damages for loss of good will and profits. It was tried to the court, sitting without a jury. At the close of appellants' opening statement, appellee moved for a "directed verdict" which was granted by the trial court after permitting appellants to make an offer of proof.

■ We first note a procedural matter. Since there was no jury, there can be no "directed verdict". Nor was this an involuntary dismissal under Rule 41(b), Arizona Rules of Civil Procedure, 16 A.R.S., since it is evident that the court granted a "directed verdict" which meant that it ruled for the appellee as a matter of law on undisputed facts. In reality, the trial court granted a summary judgment.

The determinative issue in this case is whether the contractual provision limiting damages is valid. In this regard, appellants did not claim below that appellee's conduct was other than negligent. They claim the contractual provision is void because it is oppressive and unconscionable. As a basis for this contention they point to the unequal bargaining power of the parties, contending that this is a contract of adhesion and that they had no alternative but to sign the contract. They further contend that the contract is commercially unreasonable and that there was unfair surprise because of the fine print and location of the contractual provision.

These contentions are not new. This contractual provision has been the subject of extensive litigation. All courts except a Michigan appellate court have decided against appellants' position. A list of the courts deciding adversely to appellants can be found in the case of *Gas House, Inc. v. Southern Bell Tel. & Tel. Company,* 289 N.C. 175, 221 S.E.2d 499 (1976). To that list should be added the case of *University Hills Beauty Academy, Inc. v. Mountain States Telephone & Telegraph Company,* 554 P.2d 723 (Colo.App.1976) and *Wille v. Southwestern Bell Telephone Company,* 219 Kan. 755, 549 P.2d 903 (1976). See also Annot: Telephone Directory—Mistake—Omission, 92 A.L.R.2d 919. The sole case in appellants' favor is *Allen v. Michigan Bell Telephone Company,* 18 Mich.App. 632, 171 N.W.2d 689 (1969):

The general principle governing attacks on the validity of contracts as unreasonable is stated in 14 Williston on Contracts 3rd Ed. § 1632:

> "People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a con-

tract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability."

The leading case on the question of the validity of such a limitation of liability clause in a contract for telephone directory advertising is *McTighe v. New England Telephone & Telegraph Company*, 216 F.2d 26 (2nd Cir. 1954). There the court stated:

"True it is that the courts will scrutinize with care clauses exonerating public utility companies, such as railroads, telegraph and telephone companies and others, from liability for the consequences of their own negligence, *with reference to the public services rendered by them.* The fact that the member of the public patronizing such public utility companies must take the contract proffered by the company or forego using the service has enabled the courts to inquire into the reasonableness of the type of clause now under discussion and by this test the clause applicable to the alphabetical [i. e., white pages] directory would as a matter of contract law be considered unreasonable and unenforceable. But the principle which enables courts to strike down and condemn clauses affecting the performance by the company of its functions as a public utility is limited to the area in which the public services are rendered and has no application whatever to the domain in which the public utility may freely contract in its private capacity. *The obtaining of the services of the public utility by way of transportation or communications or providing gas or electricity is quite apart from the leases, advertising contracts and a host of other miscellaneous agreements commonly made by members of the public with public utilities companies.* If there be some disparity in the bargaining power of the contracting parties it is no more than may be found generally to exist; and the courts follow the general rule that the parties are free to contract according to their own judgment and the reasonableness of their engagements will not be entered into." (Emphasis added)

In discussing *McTighe* the court in *Gas House, Inc. v. Southern Bell Telephone & Telegraph*, supra, stated:

"The reason for the rule that a common carrier, or other public utility, may not contract away its liability for negligence in the performance of its public utility service and may not claim the benefit of an unreasonable contract limiting the amount of its liability therefor, is that every member of the public is entitled by law to demand such service with full liability at a reasonable rate therefor. For the company to refuse to serve unless the customer agrees to release it from liability for its negligent performance of its obligation to serve would be a denial of this legal right in the would-be customer. Thus, such a contract limiting the liability of the carrier, or other public utility, unless reasonable, is contrary to public policy and invalid. This limitation upon the right of the common carrier, or other public utility, to contract applies, however, only to its undertakings to render services which fall within its *public service business.* For example, a telephone company leasing office space to a tenant, or an electric power company selling an electric stove, is as free to contract with reference to those matters as is any other owner of a building or dealer in electric stoves. *The business of carrying advertisements in the yellow pages of its directory is not part of a telephone company's public utility business.*

The inequality of bargaining power between the telephone company and the businessman desiring to advertise in the yellow pages of the directory is more apparent than real. It is not different from that which exists in any other case in which a potential seller is the only supplier of the particular article or service desired. There are many other modes of advertising to which the businessman may turn if the contract offered him by the telephone company is not attractive. . . .

The purpose of the Limitation of Liability Clause is to protect the telephone company from the danger of verdicts primarily speculative in amount. This is not an unreasonable objective. In this respect, the telephone company is not in a different position from the local newspaper, radio or television station, or other advertising media." (Emphasis added)

The Michigan case of *Allen v. Michigan Bell Telephone Company,* supra, was criticized in *Allen v. Michigan Bell Telephone Company,* 61 Mich.App. 62, 232 N.W.2d 302 (1975). In commenting upon the *Allen* case, the court in *Robinson Insurance & Real Estate, Inc. v. Southwestern Bell Telephone Company,* 366 F.Supp. 307 at p. 310 (D.C.W. D.Ark.1973) stated:

"*Allen* represents a departure from the majority view recognizing freedom to contract, is based upon faulty notions of the public interest, and is not in keeping with commercial realities. . . . Yellow pages is but one form of advertising. It is in no way unique or monopolistic. Numerous alternative advertising forums exist. Moreover, the disparity of bargaining power claimed to exist in the instant case is no more than is generally found to exist in commercial transactions. . . ."

The Supreme Court of Montana in the case of *State ex rel. Mountain States Telephone and Telegraph Company v. District Court,* 160 Mont. 443, 503 P.2d 526 at p. 530 (1972) stated:

"The monopolistic character of the yellow pages which the Michigan Court [Allen] decries as resulting in no meaningful choice or no competing alternate, except at a prohibitive disproportionate cost, is not exactly, as has been discussed, a one way street, particularly when one considers further that by the Michigan Court's own definition the service is desirable and at a more reasonable cost than 'market place' advertising. It necessarily follows that in some cases it may appear harsh at times but not unconscionable. The mere fact of claimed unequal bargaining position does not render it so

in today's world of commerce, where situations of this nature are not uncommon." [citation omitted]

We hold that without a demonstration of bad faith, fraud, or willful or wanton conduct by Mountain States, a limitation of liability for errors and omissions in its advertising expressed in a written and signed contract is reasonable and is not against public policy. It is within the power of the company and directory subscriber to make such contracts and they become a valid and binding limitation.

Nor do we agree with appellants' contention of unfair surprise. The signature block which appellants signed states, in bold capital type, that it is "subject to the terms and conditions stated above". On the same page as this signature appears we find the clause to which appellants object. Even when such clause appears on the reverse side of the signature page the clause has still been held to be valid. *Wille v. Southwestern Bell Telephone Company,* 219 Kan. 755, 549 P.2d 903 (1976).

The judgment is affirmed.

HATHAWAY and RICHMOND, JJ., concurring.