**Marion ROZEBOOM, individually, and d/b/a Rozy's Electric, Plaintiff and Appellant,**

**v.**

**NORTHWESTERN BELL TELEPHONE COMPANY, Defendant and Appellee.**

**No. 13858.**

Supreme Court of South Dakota.

Considered on Briefs March 25, 1983.

Decided Nov. 14, 1984.

Rehearing Denied Dec. 27, 1984.

Robert L. Jones, Sioux Falls, for plaintiff and appellant.

Thomas J. Welk of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendant and appellee.

HENDERSON, Justice (on reassignment).

For purposes of convenience and clarity, plaintiff-appellant (Marion Rozeboom, individually, and d/b/a Rozy's Electric) shall be designated Citizen or Rozy and defendant-appellee (Northwestern Bell Telephone Company) shall be referred to as Bell.

Citizen Rozy brought this action to recover $25,000.00 in damages when Bell failed to publish Rozy's business listing in the yellow pages of Bell's May 1980 directory. Citizen Rozy is an electrical contractor doing business under the name of Rozy's Electric. For several years he was listed in Bell's telephone directory, both for his business and as an individual; also, he was listed in the classified directory or yellow pages under his business name of Rozy's Electric. Rozy operates his business from his home located at 6081 Valley View Road in Sioux Falls, South Dakota, but does own a warehouse at 6412 West 12th in Sioux Falls. The directory published in May 1980 failed to include "Rozy's Electric" in the yellow pages, though Rozy was actively solicited with regard to its insertion and relied thereupon. Interrogatories, answers thereto, depositions, and affidavits of Bell's employees were filed. At the hearing on the motion for summary judgment, the trial court requested a dollar difference in cost of a private telephone and a business telephone from the parties, and thereupon announced that it was going to enter judgment for Rozy in the amount of such difference ($187.79). Bell's motion for summary judgment was thereafter granted and the trial court limited Rozy's recovery to $187.79. This computation was for the time that Rozy's yellow page advertising was omitted from the yellow pages in the telephone directory. We reverse and remand for a trial on damages holding the contract entered into between Rozy and Bell is a contract of adhesion.

We are presented with this issue: Is the following limitation of liability clause in Bell's directory listing contract, with its subscribers, unconscionable and thus unenforceable:

If the Telephone Company shall omit said advertisement or any additional advertising from any issue of its directory, in whole or in part, or shall make errors therein, its liability therefor shall in no event exceed the amount of the charges for the advertising which was omitted or in which the error occurred in such directory issue.

It is obvious that Bell solicits businesses, such as Rozy's, to make money. Rozy, conversely, wants his business name known by advertising in the yellow pages so he can make money. Rozy gets something of value or he would not so advertise. Hence it appears he loses something of value (sold to him) when his advertising is negligently omitted. Bell, by advertising the use of its yellow pages, accustomed the public to extensive use of its yellow pages. It proclaims, nationwide, the effectiveness of yellow page advertising.

The terms of the agreement between Bell, a monopoly, and Citizen were substantively unreasonable. Bell, a public utility, foisted upon the private Citizen a contract form prepared by it with an exculpatory clause on a "take it or leave it" basis. Private Citizen could obtain yellow page advertising from only one source and to limit recovery to the amount of the charges for the advertising is unconscionable. This contract of adhesion should not be enforced as a matter of public policy. This was not a matter of Citizen unwisely entering into a contract. Citizen did not have equal bargaining power with the monopoly. Citizen has the right to sue in damages and to be afforded an opportunity to prove up damages for detriment caused

to him. Citizen had his name listed in Bell's telephone directory for many years in the classified directory or the yellow pages under his business name of Rozy's Electric and had a right to reasonably rely upon the proclaimed efficiency of this public utility monopoly. If not totally vital to his business, it was certainly beneficial and the parties mutually so intended such a benefit. Rozy should therefore be afforded an opportunity to prove up damages. Be mindful that a summary judgment was granted against Rozy based upon the trial court's determination of the contract's validity and the showings to the trial court. Hence was Rozy dismissed for, essentially, no suit in law and no issue of material fact. In *Nemec v. Deering*, 350 N.W.2d 53, 55 (S.D.1984), we stated:

[T]his Court follows the guidelines set out in *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968).

(1) Evidence must be viewed most favorable to the nonmoving party;

(2) The burden of proof is on the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law;

(3) Summary judgment is not a substitute for a court trial or for trial by jury where any genuine issue of material fact exists;

(4) Surmise that a party will not prevail upon trial is not sufficient basis to grant summary judgment on issues which are not shown to be sham, frivolous, or so unsubstantial that it is obvious that it would be futile to try them;

(5) Summary judgment is an extreme remedy which should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against movant;

(6) When no genuine issue of fact exists, summary judgment is looked upon with favor and is particularly adaptable to expose sham claims and defenses.

"Summary judgment proceedings are not a substitute for trial when the claims asserted are not a sham or frivolous. The remedy is authorized only when the movant is entitled to judgment as a matter of law because there are no issues of material fact." *Caneva v. Miners & Merchants Bank*, 335 N.W.2d 339, 341 (S.D.1983).

This Court deems that this case was not one in which summary judgment should have been granted as it was granted based upon a limitation of liability by contract which contract we hold is unconscionable. This contract of adhesion is foursquare before us in the record and our determination of unconscionability is contrary to the holding of the trial court.

Contracts of adhesion birthed from the requirement that one party must "adhere," i.e., inequality of bargaining power. Such denotation arose from the French civil law. The term "adhesion" was early recognized in international law. *See* Patterson, *The Delivery of a Life-Insurance Policy*, 33 Harv.L.Rev. 198, 222 (1919), for a 1919 recognition of the concept of adhesion. Throughout law schools and legal seminars in this Nation, this subject has grown rapidly in interest and vitality. There can be no doubt that there is a trend to establish its validity in civil litigation.

In 5A Corbin, *Corbin on Contracts* § 1164, at 221–23 (1964), it is provided: Harshness, oppression, unconscionableness exist in varying degrees and always depend upon facts some of which may be doubtful. Therefore, here is a field in which it is often said that the court has discretion. The question of harshness and oppression cannot be considered wholly apart from that of inadequacy of consideration, mistake, fraud, duress, or undue influence.

The attitude of the Chancellors toward "unconscionable" contracts could not help but influence the courts of purely common law jurisdiction also. This is especially true now when almost all of our judges are also Chancellors, although they say repeatedly that they will not

"make a new contract for the parties" merely because it has turned out badly for one of them. They refuse to enforce contractual penalties and forfeitures by any remedy, not merely by equitable remedies. See the discussion and the citations in § 128 herein. Unconscionability exists in greatly varying degrees; and not even the most "hard boiled" judge has a stomach for the worst.

The Uniform Commercial Code, Sales, Section 2–302, provides: "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." This has already been enacted as law in many States and is well on its way to general adoption. Wherever this section is made applicable to contracts for the sale of goods, no court should fail to make it applicable to all other contracts; for the policy that it adopts is applicable to all alike. In all cases alike, it puts upon the court the responsibility of determining the degree of unconscionability and the requirements of "justice".

In South Dakota, the unconscionability section of the U.C.C. is SDCL 57A–2–302.* SDCL 57A–2–302(1) is identical to U.C.C. § 2–302(1), *supra;* SDCL 57A–2–302(2) provides:

> When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

In South Dakota, we have not been presented with the precise question involved in this case. However, we have very recently spoken against contract provisions which are "one-sided" and declared that they are, in effect, against public policy and should be declared unconscionable. Justice Dunn, writing for the Court, in *Durham v. Ciba-Geigy Corp.*, 315 N.W.2d 696, 700 (S.D.1982), citing *United States Leasing Corp. v. Franklin Plaza Apts.*, 65 Misc. 1082, 319 N.Y.S.2d 531 (1971), expressed: "One-sided agreements whereby one party is left without a remedy for another party's breach are oppressive and should be declared unconscionable." Contracts of adhesion were mentioned in *Green v. Clinic Masters, Inc.*, 272 N.W.2d 813, 815–16 (S.D.1978). Although this Court found no contract of adhesion in *Green*, it certainly left the door open for an acceptance of the viewpoint that a contract of adhesion would be recognized, under proper circumstance, in South Dakota. In *Green*, this Court placed a great deal of emphasis upon the fact that there was no disparity of bargaining power between the parties inasmuch as the South Dakotan, who was advocating a contract of adhesion, was a chiropractor and "an experienced professional capable of understanding and intending the agreements he makes." *Green*, 272 N.W.2d at 816. Furthermore, this Court specifically noted that "[t]he record shows there was negotiation ...." *Id.* Rozy was not a professional and he could not negotiate with Bell. In *Green*, there was no great disparity in bargaining power; here, however, there is great disparity in bargaining power.

North Dakota, our sister state, has not been timorous in recognizing contracts of adhesion. In applying the concept to grain purchase contracts, that state's highest court in *Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d 494, 497 (N.D. 1974), stated:

> (1) A contract is construed most strongly against the party who prepared it * * *
> (2) An agreement which is essentially a "contract of adhesion" should be examined with special scrutiny by the courts to assure that it is not applied in an

---

* For treatise on unconscionable installment sales contract and discourse on dominant parties dictating terms in standardized form contracts leaving the weaker party with no room to negotiate requiring the weaker party to "take it or leave it," *see* 79 Harv.L.Rev. 1299 (1965).

unfair or unconscionable manner against the party who did not participate in its drafting.

Bell prepared the contract in question. This State should examine this contract with an impartial but critical eye in determining whether it is unconscionable against Rozy, who did not participate in its drafting. In *Bekken v. Equitable Life Assur. Soc.*, 70 N.D. 122, 143, 293 N.W. 200, 212 (1940), the North Dakota Supreme Court applied the term "contract of adhesion" to insurance contracts. That same court, in State *ex rel. Hagen v. Bismarck Tire Center*, 234 N.W.2d 224, 225 (N.D. 1975), concluded that an employer's vacation policy which became part of an employment contract when drafted and announced to employees, *without any bargaining*, was in effect a contract of adhesion.

It is crucial to understand that this case involves an individual versus a monopoly. We do not have two corporations dealing at arms length nor two individuals dealing at arms length. We have a factual scenario where the bargaining power is wholly unequal. As a result of that economic inequality and monopoly of Bell, the terms of this contract became substantively unreasonable and should not be enforced. We do not suggest that simply because this contract is standardized and preprinted, ipso facto, it is unenforceable as a contract of adhesion. Rather, we hold that the terms of this specific standardized contract are unreasonable, oppressive, and therefore unconscionable. In *Allen v. Michigan Bell Telephone Co.*, 18 Mich.App. 632, 171 N.W.2d 689 (1969), a summary judgment for the telephone company was reversed and the case was remanded for trial. The Michigan Court of Appeals concluded that the contract provision limiting the telephone company's liability was unreasonable and refused to enforce it. In the second appeal of *Allen*, the Michigan Court of Appeals adhered to its earlier decision as the law of the case. *Allen v. Michigan Bell Telephone Co.*, 61 Mich.App. 62, 232 N.W.2d 302 (1975). There are copious authorities which generally follow the "free-

dom of contract" theory. As it was pointed out in *Allen*, 171 N.W.2d at 693:

It is not enough to say that "freedom of contract" is the founding principle of our economy, for freedom of contract is directly related to another basic principle of our economy—"freedom of enterprise". It must be recognized that freedom of enterprise became severely restricted as the giants in our industries and services overwhelmed their competition. It is neither rational nor just to contend that freedom of contract must remain static and immutable as freedom of enterprise inexorably recedes. Both concepts must adjust and adapt to the times.

Here, Northwestern Bell Telephone Company had a monopoly, i.e., an exclusive grant to transact telephone business in Sioux Falls, South Dakota. When a business entity has a 100% corner on the market, and it is the only one empowered by the law to sell a product, how can that be termed "free enterprise"? If a contract involves an interest of the public, such as telephonic communication, public policy comes into play and the courts should not enforce a contract which is contrary to public policy. Is there any doubt that Bell exercises a superior bargaining power to Rozy? And who gave that superior bargaining power to Bell? It was, of course, the political subdivisions of the State of South Dakota through its people. Indeed, one of the defenses asserted herein by Bell is that its tariffs and schedules are established by the P.U.C.; further, that the telephone directories and listings are regulated by the P.U.C. By leap of logic, Bell would have the courts believe that it is unreachable, in a court of law, because the P.U.C. umbrellas and regulates its activities. Such reasoning does violence to Article VI, § 20 of the South Dakota Constitution which provides that: "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay." The P.U.C. cannot become a body to

regulate claims for damages wrought in private contract. To regulate tariffs, schedules, directories, and listings is one thing, but to adjudicate on monetary rights arising thereunder is conceptually different. We therefore take the position that the people and the courts have a right to subject Bell to a claim for damages and/or declare the contract void precipitated by the carelessness and negligence of Bell, notwithstanding an exculpatory clause. We fully appreciate that our viewpoint is not the traditional viewpoint in this Nation. The righteousness of a cause is often solitary and perhaps time will better serve our pronouncement. In a democratic society, we persevere under a system of laws where change is inevitable. Change can be simple, good, and effectual. Here, we associate with change rooted in simple fairness and opposed to basic oppression. *Accord* with our viewpoint (but restricted to invalidity): *Tunkl v. Regents of University of California*, 60 Cal.2d 92, 383 P.2d 441, 444–46, 32 Cal.Rptr. 33 (1963); 6 A.L.R.3d 693 (1966). Bell not only had a monopoly on telephone usage, it also had a monopoly on the type of advertising sought by Rozy. The only way for Rozy to realistically communicate with the same audience, as his competitors reach, is to advertise in the yellow pages. Justice demands that an aggrieved party reach out and touch the cause of his grievance.

■ Both of the litigants briefed unconscionability. It is foursquare before us. Any complainant must not only assert unconscionability and plead it, but must likewise prove it. E.A. Farnsworth, *Contracts* §§ 4.26–4.29, at 309 (1982). For treatise that unconscionability should be actionable as a tort, *see* King, *The Tort of Unconscionability: A New Tort for New Times*, 23 St. Louis U.L.J. 97 (1979). *See also*, Wells, *The Doctrine of Unconscionability: A Sword as Well as a Shield*, 29 Baylor L.Rev. 309 (1977). Rozy is claiming damage arising out of this contract and was summarily denied the right to insist on damages, either by contract or by tort, because of the damage limitation contained in the directory advertising record which limited Rozy's damage to the amount paid. Rozy, when he has his foot in the damage door, is required to establish by independent proof his compensatory damages. A review of the cases reveals that many courts get hung up on the impracticality or impossibility of proving up damages for a failure by a telephone company to list a customer in the yellow or white pages of the telephone book. These courts then deny the cause of action altogether. A typical example is *Gas House, Inc. v. Southern Bell Telephone & Telegraph Co.*, 289 N.C. 175, 184, 221 S.E.2d 499, 505 (1976):

It would be virtually, if not completely, impossible to determine what portion of the business done by an advertiser is attributable to its use of "Yellow Page" advertising. There are many factors which enter into periodic fluctuations in the volume of business done by a seller of goods. The purpose of the Limitation of Liability Clause is to protect the telephone company from the danger of verdicts primarily speculative in amount. This is not an unreasonable objective.

They refuse to allow a plaintiff like Rozy to proceed to his proof on damage. Rozy either can or cannot prove damage and that is all a matter of compensatory damage proof. Rozy should not have the courtroom door slammed on him, in theory, simply because it would be difficult for him to establish loss of business or profits. If Rozy, or others similarly situated, cannot meet the burden of proof on damage, a motion for directed verdict on damages would lie. A recent case in the Wisconsin Supreme Court supports this writing on damages; further, said decision holds that a contract, such as we witness in this case, is an exculpatory, unconscionable, and unenforceable contract, being against public policy. It was held that an award of damages for telephone company's negligent omission of corporate name of drapery business from yellow pages advertisement was not too speculative, in that verdict of jury awarding $9,000 to drapery business passed scrutiny of an experienced trial

judge on motions after verdict; and that the courts of Wisconsin protect against speculative damages by the jury system, instructions given to the jury, trial judge's rulings during the trial and motions after verdict. W.S.A. 805.16. *Discount Fabric House v. Wis. Telephone Co.*, 117 Wis.2d 587, 345 N.W.2d 417 (1984). As in our sister state of Wisconsin, we likewise have procedural safeguards against miscarriages of justice in damage awards. Rozy need only establish his damage, if any, with reasonable certainty. "In ascertaining the amount of recovery, there must be a reasonable basis for measuring the loss; damages need only be measured with reasonable certainty." *Atyeo v. Paulsen*, 319 N.W.2d 164, 166 (S.D.1982), citing *Wang v. Bekken*, 310 N.W.2d 166 (S.D.1981), *Schmidt v. Forell*, 306 N.W.2d 876 (S.D. 1981), *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114 (S.D.1977), and *Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D.1977).

Reversed and remanded for a trial on the merits.

KERN and McKEEVER, Circuit Judges, concur.

FOSHEIM, C.J., and WOLLMAN, J., dissent.

KERN, Circuit Judge, sitting for MORGAN, J., disqualified.

McKEEVER, Circuit Judge, sitting for DUNN, Retired Justice, disqualified.

WUEST, Circuit Judge, acting as Supreme Court Justice, not participating.

FOSHEIM, Chief Justice (dissenting).

There are two lines of authority addressing whether to enforce contract provisions limiting a phone company's liability for failing to provide requested yellow page advertising. In *Allen v. Michigan Bell Tel. Co.*, 18 Mich.App. 632, 171 N.W.2d 689 (1969), *appeal denied*, 383 Mich. 804 (1970), a summary judgment for the phone company was reversed and the case was remanded for trial. The Michigan Court of Appeals concluded that the provision was unreasonable and refused to enforce it. In the second appeal of *Allen*, the Court adhered to its earlier decision as the law of the case. *Allen v. Michigan Bell Tel. Co.*, 61 Mich. App. 62, 232 N.W.2d 302 (1975).

*Allen* stands virtually alone, however, since the overwhelming majority enforces provisions limiting phone companies' liability in omitting or erroneously listing an advertisement in a directory. *McTighe v. New England Tel. and Tel. Co.* 216 F.2d 26 (2d Cir.1954); *Pilot Indus. v. Southern Bell Tel. and Tel. Co.*, 495 F.Supp. 356 (D.C.S.C.1979); *Robinson Ins. and Real Estate, Inc. v. Southwestern Bell Tel. Co.*, 366 F.Supp. 307 (W.D.Ark.1973); *Vails v. Southwestern Bell Tel. Co.*, 504 F.Supp. 740 (W.D.Okl.1980); *Mendel v. Mountain States Tel. and Tel. Co.*, 117 Ariz. 491, 573 P.2d 891 (Ariz.App.1977); *University Hills Beauty Academy v. Mountain States Tel. and Tel. Co.*, 38 Colo.App. 194, 554 P.2d 723 (1976); *Advance Service, Inc. v. General Tel. Co. of Fla.*, 187 So.2d 660 (Fla. App.1966); *Southern Bell Tel. and Tel. Co. v. C & S Realty*, 141 Ga.App. 216, 233 S.E.2d 9 (Ga.App.1977) *overruled on other grounds* at *Georgia-Carolina Brick & Tile Company v. Brown et al.*, 153 Ga.App. 747, 752, 266 S.E.2d 531, 537 (1980); *McClure Engineering Assocs., Inc. v. Reuben Donnelley Corp.* 101 Ill.App.3d 1109, 57 Ill.Dec. 471, 428 N.E.2d 1151 (1981) *affd.*, 95 Ill.2d 68, 69 Ill.Dec. 183, 447 N.E.2d 400 (1983); *Louisville Bear Safety Service Inc. v. South Central Bell Tel. Co.*, 571 S.W.2d 438 (Ky.App.1978); *State ex rel. Mountain States Tel. and Tel. Co. v. District Court of Second Judicial Dist.*, 160 Mont. 443, 503 P.2d 526 (1972); *Gas House, Inc. v. Southern Bell Tel. and Tel. Co.*, 289 N.C. 175, 221 S.E.2d 499 (1976) *overruled in part, State ex. rel. v. Southern Bell Tel. & Tel. Co.*, 307 N.C. 541, 299 S.E.2d 763, 766 (1983); *see generally* 92 A.L.R.2d 917 (1963). *But see, Discount Fabric House Inc. v. Wis. Tel. Co.*, 117 Wis.2d 587, 345 N.W.2d 417 (Wis.1984). Moreover, a number of these cases have considered, rejected, and severely criticized the *Allen* case. *Robinson Ins. and Real Estate, Inc., v. Southwestern Bell Tel. Co.*,

*supra; Mendel v. Mountain States Tel. and Tel. Co., supra; McClure Engineering Assoc., Inc. v. Reuben Donnelley Corp., supra; State ex rel. Mountain States Tel. and Tel. Co. v. District Court of the Second Judicial Dist., supra; Gas House Inc. v. Southern Bell Tel. and Tel. Co., supra; But see, Discount Fabric v. Wis. Tel. Co., supra. Gas House Inc. v. Southern Bell Tel. and Tel. Co.,* 221 S.E.2d at 505, enunciates compelling reasons to reject Rozeboom's unconscionability argument:

> The inequality of bargaining power between the telephone company and the businessman desiring to advertise in the yellow pages of the directory is more apparent than real. It is not different from that which exists in any other case in which a potential seller is the only supplier of the particular article or service desired. There are many other modes of advertising to which the businessman may turn if the contract offered him by the telephone company is not attractive.

> We find in this record no basis for a conclusion that the application of the Limitation of Liability Clause could lead to a result so unreasonable as to shock the conscience. In the absence of most exceptional circumstances, which do not appear in this record, the insertion of a "Yellow Page" advertisement under the wrong classification heading will not produce a different result from that which would follow a complete omission of the advertisement from the directory. It would be virtually, if not completely, impossible to determine what portion of the business done by an advertiser is attributable to its use of "Yellow Page" advertising. There are many factors which enter into periodic fluctuations in the volume of business done by a seller of goods. The purpose of the Limitation of Liability Clause is to protect the telephone company from the danger of verdicts primarily speculative in amount. This is not an unreasonable objective.

I would adhere to the majority rule of law which in my opinion is sound law.

I am hereby authorized to state that Justice WOLLMAN joins in this dissent.