Hillsborough
No. 85-476

PK's Landscaping, Inc.

v.

New England Telephone and Telegraph Company

December 5, 1986

*Sullivan, Gregg and Horton P.A.*, of Nashua (*H. Scott Flegal* on the brief and orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Arthur G. Greene* and *Joseph A. Foster* on the brief, and *Mr. Greene* orally), for the defendant.

PER CURIAM. The plaintiff, PK's Landscaping, Inc. (PK's) appeals from an order of the Trial Court (*Dalianis*, J.) granting the defendant's motion for summary judgment. RSA 491:8-a. PK's sought damages in its suit from the defendant for failure to place an advertisement of PK's in the Yellow Pages of the Nashua area telephone directory for the 1980 edition.

The trial court's order effectively enforces the limitation of liability clause in the advertising contract between the plaintiff and the defendant, New England Telephone and Telegraph Company (NET). The following two issues are presented for our review: (1) whether the trial court erred in ruling that the contract clause which limited NET's liability was enforceable; and (2) whether the trial court erred in ruling that NET had not breached a duty of care in failing to publish the plaintiff's advertisement. We find no error and affirm.

On or about October 29, 1979, PK's entered into a written contract with NET. NET agreed, for due consideration, to publish certain advertisements for PK's in the 1980 Nashua Area Yellow Pages. A provision in the written contract limited NET's liability for omitting a customer's advertisement to the amount paid for the advertisement. Paragraph 8 of the contract provided:

> "The applicant agrees that the company shall not be liable to correct any omission or error in any directory, nor will it be required to give any special notice thereof of any type to its subscribers prior to the next regularly scheduled publication of this directory, nor shall it be liable for errors or omissions (including total omissions) in such directory advertising beyond the amount paid for the item or items in which errors or omissions occur for the life of the directory involved."

PK's agrees that prior to signing the contract, its president read and understood the provision which limited liability. The plaintiff's president also admitted that he maintained a residential and not a business telephone at the place of business to be advertised in the Yellow Pages. NET's policy is that only persons maintaining a business telephone may advertise in the Yellow Pages.

█ In considering a motion for summary judgment, the trial court is guided by the following principles: (1) it is the moving party's burden to establish that there is no dispute on any issue of material fact *and* that it has a right to judgment as a matter of law; (2) the information before the court is to be construed in the light most favorable to the opponent of the motion; and (3) the summary judgment motion is to be used to end unnecessary litigation, but not to cut off a party's right to trial where there is a genuine dispute on an issue of material fact. R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1044, at 43 (1984). In granting the defendant's motion, then, the trial court held that no genuine dispute existed concerning any issue of material fact. We agree.

█ PK's first argument is that the clause that limits NET's liability is an unconscionable provision in a contract of adhesion. We have held "that contracts may be declared void because [they are] unconscionable and oppressive." *Morrill v. Bank*, 90 N.H. 358, 365, 9 A.2d 519, 525 (1939). *Cf.* RSA 382–A: 2–302 (applies only to sales of goods).

Many States have faced this issue, and a substantial majority of jurisdictions have held similar clauses enforceable. We join the majority of jurisdictions in holding that the limitation of liability clause is enforceable in these circumstances. We find *Louisville Bear Safety Service, Inc. v. South Central Bell Telephone Co.*, 571 S.W.2d 438 (Ky. Ct. App. 1978), to be a particularly persuasive case. There the court stated:

> "[i]t is quite true that telephone companies are generally monopolies in each service area and that the Yellow Pages are a unique advertising device for which there is no practical substitute, but the situation here is not one of an uninformed consumer and a coercive or fraudulent company. . . . Although [there] may have [been] no alternative that would [have provided] exactly the same service at comparable cost, there were other means of advertisement available."

*Id.* at 439–40.

PK's cites minority decisions which have held telephone companies liable for failing to fulfill contracts in cases involving circumstances similar to the ones in this case. The court in *Rozeboom v. Northwestern Bell Telephone Co.*, 358 N.W.2d 241 (S.D. 1984), stated that the telephone company, as a public utility and a monopoly, "foisted" upon a business a contract form which the business had little choice whether to accept or reject. *Id.* at 242. Its reasoning for

holding the company liable was that Yellow Pages advertising was available from only one source and that, accordingly, limiting recovery to the amount spent on advertising itself was unconscionable. The court concluded that this contract amounted to a contract of adhesion and that it "should not be enforced as a matter of public policy." *Id.*

Michigan and Wisconsin have adopted views similar to that of the *Rozeboom* court. *See Allen v. Michigan Bell Telephone Company*, 18 Mich. App. 632, 171 N.W.2d 689 (1969); *Allen v. Michigan Bell Telephone Company*, 61 Mich. App. 62, 232 N.W.2d 302 (1975) (decided on law of the case); *Discount Fabric House v. Wis. Telephone Co.*, 117 Wis. 2d 587, 345 N.W.2d 417 (1984). The courts in these cases have rejected the contention that damages are too speculative. On the contrary, they have asserted that there are procedural safeguards to determine damages; *i.e.*, that the plaintiff must present damages with "reasonable certainty." *Rozeboom, supra* at 247.

NET asserts here that it has inserted a limitation of liability clause in its Yellow Pages advertising contracts to provide such advertising at low cost, as well as to prevent "unpredictable liability." Some States agree and have determined that the danger of speculative verdict amounts can be avoided by enforcing the limitation of liability clause. *See R. A. Berjian, D.O., Inc. v. Ohio Bell Tel.*, 54 Ohio St. 2d 147, 375 N.E.2d 410 (1978) (upholding liability provision, stating it was an attempt to avoid indeterminable future liabilities).

■ The *Rozeboom* court emphasized the importance of the telephone company's status as a public utility. *Rozeboom, supra* at 243. Contrary to the court in *Rozeboom*, we find the contract between PK's and NET was not undertaken as a part of NET's duties as a public utility. The Second Circuit addressed this issue in *McTighe v. New England Telephone and Telegraph Co.*, 216 F.2d 26 (2d Cir. 1954), when, citing Vermont authority, it stated:

> "[i]n entering into the advertising contract, the telephone company in its private capacity contracted as to matters outside the scope of its public service functions, and was free to include in the contract a limitation of liability, as this would not operate to defeat its public purpose."

*Id.* at 30. Other jurisdictions have also adopted this proposition. *See Mitchell v. Southwestern Bell Telephone Co.*, 298 S.W.2d 520, 524 (Mo. Ct. App. 1957) (advertisements in the phone directory were a matter of private contract between the telephone company and subscriber); *University Hills Beauty Academy v. Mtn. States T & T*, 38

Colo. App. 194, 196, 554 P.2d 723, 725 (1976) (that Yellow Pages publication is entirely a private concern).

■ PK's argues further that not only is the limitation of liability clause unconscionable, but there is a great disparity in size between it and NET. While this may be true, this disparity alone does not preclude the more powerful party from insisting on a term favorable to it. *Cailler v. Humble Oil & Refining Co.*, 117 N.H. 915, 919, 379 A.2d 1253, 1256 (1977). *See also Wille v. Southwestern Bell Telephone*, 219 Kan. 755, 549 P.2d 903 (1976).

■ PK's points to *Pittsfield Weaving Co., Inc. v. Grove Textiles, Inc.*, 121 N.H. 344, 430 A.2d 638 (1981), where we held that, based on the imbalance in bargaining power, the contract between the parties was so coercive and one-sided as to have prevented the plaintiff from agreeing to its terms voluntarily. *Id.* at 347, 430 A.2d at 640. The case at bar is not analogous. Here, PK's president admitted to having read, understood and assented to the contract. No additional extenuating circumstances in this case permit us to find that the limitation of liability clause was unconscionable.

■ Finally, we caution NET. Although the limitation of liability clause is valid in this case, there are limits to the enforceability of such clauses. We agree with the jurisdictions which have held that wanton and wilful conduct intended to harm is not subject to the limitation of liability. *See Wheeler Stuckey Inc. v. Southwestern Bell Telephone Co.*, 279 F. Supp. 712, 714 (1967) (telephone company may limit its liability by contract as long as it does not seek immunity from gross negligence or wilful misconduct); and *Tobler's Flowers v. Southwestern Bell Tel.*, 632 S.W.2d 15, 17 (Mo. Ct. App. 1982) (limitation is effective only when the telephone company is merely negligent, not when its acts can be construed as intentional torts). If the telephone company acts in such a way that its actions can reasonably be construed as wilful and wanton, the protection afforded by the limitation of liability clause shall not be available.

■■ PK's second argument is that NET failed to exercise reasonable care to ensure that PK's advertisement would appear in the Yellow Pages, and thus was guilty of negligent performance of its contractual duties. NET is correct, however, in stating that New Hampshire does not recognize a cause of action for the negligent performance of contract. *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 613, 392 A.2d 576, 580 (1978); *Barrett v. Company*, 80 N.H. 354, 117 A. 264 (1922). PK's argues that *Robinson v. Colebrook Guaranty Savings Bank*, 109 N.H. 382, 254 A.2d 837 (1969) recog-

nizes such a cause of action. That case involved a third-party beneficiary contract. Although not explicitly stated, our consideration in finding a "duty of care" in *Robinson* was that the contract involved a bank in the role of a fiduciary. A bank is held to a higher standard because it owes a fiduciary duty to its depositor. We do not recognize nor are we willing to create a corresponding duty between the telephone company and its Yellow Pages advertisers.

We do not find that the case at bar provides sufficient reason to change the settled law of this jurisdiction. We therefore decline to do so.

> *Affirmed by an equally divided court.*

THAYER, J., did not sit; BATCHELDER and JOHNSON, JJ., dissented.

BATCHELDER and JOHNSON, JJ., dissenting: We respectfully dissent from the prevailing view of this court. This is not a case where PK's advertisement was omitted because of a negligent oversight by NET in not placing the advertisement in the directory. Our colleagues have cited cases from the many States which have considered such negligent oversight cases, and the majority view is that the limited liability clause is controlling. However, our colleagues admit that there is a limit to the enforceability of such clauses, specifically in cases where there is gross negligence or intentional misconduct. We find this to be a case where the limitation of liability clause should not be enforced.

In this action, PK's has claimed that NET intentionally failed to include PK's advertisement in its Yellow Pages because of a company policy, and that NET: (1) failed to make this policy known to PK's; and (2) failed to allow PK's to remedy the defect, *e.g.*, by listing the services under one of PK's business phones or purchasing a third business phone.

In our view, there is a need for factual findings in this case and, consequently, the granting of NET's motion for summary judgment was error. We do not know what NET's representative told PK's concerning the need to have a business phone in order to advertise in the Yellow Pages; what efforts were made by NET to inform PK's that a new telephone was needed, once it was discovered that the number submitted was not a business telephone number; or whether PK's was informed that one of the already existing business telephone numbers could be used.

Our dissent is based on a finding that NET acted intentionally and a conclusion that the provision in the contract limiting NET's liability to the amount paid for Yellow Pages advertising is uncon-

scionable. A minority of States have held such clauses to be unconscionable because of the unique nature of Yellow Pages advertising or because the telephone company is a public utility with duties to the general public. *See Rozeboom v. Northwestern Bell Telephone Co.,* 358 N.W.2d 241 (S.D. 1984); *Allen v. Michigan Bell Telephone Company,* 18 Mich. App. 632, 171 N.W.2d 689 (1969); *Discount Fabric House v. Wis. Telephone Co.,* 117 Wis. 2d 587, 345 N.W.2d 417 (1984). The court in *Louisville Bear Safety Service Inc. v. South Central Bell Telephone Co.,* 571 S.W.2d 438 (Ky. Ct. App. 1978), although holding that the telephone company can limit its liability, stated at the outset that "[i]t is quite true that telephone companies are generally monopolies in each service area and that the Yellow Pages are a *unique* advertising device for which there is no practical substitute." *Id.* at 439–40 (emphasis added). Also, NET, in seeking advertisers in the Yellow Pages, emphasizes the uniqueness of the advertising medium: "[t]he number of advertisers and their expenditures in the Yellow Pages has increased every year—regardless of economic conditions—as astute business people recognize this *unique* link in the sales process." (Emphasis added.)

The unconscionability factor stems, in no small part, from the fact that PK's, a small New Hampshire business, is dealing with a monopoly, NET. The language in *Rozeboom v. Northwestern Bell Telephone* is compelling. "We do not have two corporations dealing at arms length nor two individuals dealing at arms length. As a result of [the] economic inequality and monopoly of Bell, the terms of this contract became substantively unreasonable and should not be enforced." 358 N.W.2d at 245. We agree with the reasoning of the *Rozeboom* court and believe that the minority view ought to be adopted by this court. The Fifth Circuit, in its most recent interpretation of case law in this area, has reached the same conclusion. This increases the number of jurisdictions supporting the view that limitation of liability clauses in telephone company contracts may be held unenforceable and leads us to conclude that there may be a developing trend toward wider adoption of this view. *See Helms v. Southwestern Bell Telephone Co.,* 794 F.2d 188 (5th Cir. 1986) (finding cause of action in negligence for misprint in Yellow Pages advertisement). Accordingly, we believe that the motion for summary judgment should not have been granted and that the case should be remanded to the superior court for trial.