Unified Judicial System

 

 
 Mobile Electric Service, Inc.
Plaintiff and Appellee, v.
Firstel, Inc.
Defendant and Appellant. [2002 SD 87]
South Dakota Supreme Court
Appeal from the Circuit Court of The Second Judicial Circuit
Minnehaha County, South Dakota
Hon. William J. Srstka, Judge
Steven R. Nesson Sioux Falls, South Dakota
Attorneys for plaintiff and appellee.
 
Debra S. Sittig of Woods, Fuller, Shultz & Smith, P.C. Sioux Falls, South Dakota
Attorneys for defendant and appellant
 
Considered on Briefs October 1, 2001
Reassigned 3/19/2002
Opinion Filed 7/24/2002
#21818
 
GORS, Acting Justice (on reassignment).
 
[Â¶1.] FirsTel, Inc. (FirsTel) appeals the decision of the trial court denying its motion to dismiss.  FirsTel claimed that its liability to Mobile Electronics Service, Inc. (Mobile) for failure to change Mobileâs phone numbers from âunlistedâ to âlistedâ is limited by a tariff filed with the South Dakota Public Utilities Commission (PUC) and incorporated by reference in the listing contract with Mobile.  We affirm.
FACTS AND PROCEDURE
[Â¶2.] FirsTel is one of several providers of local telephone exchange services in South Dakota.  One of the services that it provides is classifying clientsâ telephone numbers as âbusinessâ or âresidentialâ and âlistedâ or âunlisted.â  Mobile is a Sioux Falls business that entered into a contract with FirsTel for local telephone service.  
[Â¶3.] Mobile alleges that in May of 1999, it contacted U.S. West Dex (Dex) to have Mobileâs telephone numbers listed in the business white pages and to have an advertisement in the yellow pages.  Dex advised Mobile that its phone numbers could not be published in the white pages because FirsTel classified Mobileâs business numbers as âunlisted.â  Mobile claims that it immediately contacted FirsTel and was assured that the classification would be changed in time for Dex to include Mobile in the publication of the 1999-2000 directory.  When the Dex directories were distributed months later, Mobileâs telephone number was not included in the business white pages.  Mobile also found that its business number was still classified as âunlisted,â despite FirsTelâs previous assurances. 
[Â¶4.] Mobile sued FirsTel for breach of contract and ordinary negligence,  seeking damages for loss of business and the cost of additional advertising.  FirsTel moved to dismiss, claiming that Mobile was barred by a tariff that limited Mobile's damages to the proportionate charge for the service for the period during which the service was affected.  Mobile then moved to amend its complaint to include a claim that including the tariff created an illegal contract adhesion and therefore was unenforceable.  Mobile also sought to amend its negligence claim and additionally assert that FirsTelâs acts were intentional and reckless.    
[Â¶5.] The trial court denied FirsTelâs motion to dismiss and granted Mobileâs motion to amend, concluding that the tariff was an unconstitutional delegation of legislative authority.  FirsTel appeals.
STANDARD OF REVIEW
[Â¶6.] This Courtâs standard of review of a trial courtâs grant or denial 
of a motion to dismiss is the same standard that is applied upon 
review of a motion of summary judgment: âis the pleader entitled 
to judgment as a matter of law?â  We review all facts in a light 
most favorable to the nonmoving party.  In reviewing under this 
standard, we give no deference to the trial court's conclusions of 
law. 
 
Hansen v. Kjellsen, 2002 SD 1, Â¶6, 638 NW2d 548, 549 (internal citations omitted).
ANALYSIS AND DECISION
[Â¶7.] On May 29, 1998, FirsTel filed a telephone tariff with the PUC.  Section 2.4.1.A of the tariff provides:
The Companyâs liability, if any, for its willful misconduct is not limited by this tariff.  With respect to any other claim or suit by a Customer or by any others, for damages associated with the installation, provision, termination, maintenance, repair or restoration of a service, and subject to the provisions following, the Company's liability, if any, shall not exceed an amount equal to the proportionate charge for the service for the period during which the service was affected.  This liability for damages shall be in addition to any amounts that may otherwise be due the Customer under this tariff as a Credit Allowance for Interruptions.
 
(emphasis added).  The contract between Mobile and FirsTel is preprinted on the front and back on one sheet of paper.  The contract does not state that FirsTelâs liability is limited.  The tariff is not set out in the contract.  The only mention of any tariff is contained in this oblique statement on the back of the contract:
FirsTel provides service in accordance with applicable Tariffs for the state or federal jurisdiction in which Service is provided, incorporated herein by this reference.
 
FirsTel argues that a telephone company may limit its liability for negligence and breach of contract through tariff provisions.  They claim that the tariffs act to protect the public from increased utility rates.  Mobile concedes that the Legislature may constitutionally delegate regulation of telecommunication tariffs to the PUC.  Mobile argues, however, that FirsTel may not insulate itself from liability for ordinary negligence and breach of contract by unilaterally drafting and filing a tariff with the PUC[1]  and then incorporating it by reference in the contract.  We agree.  
[Â¶8.] In Rozeboom v. Northwestern Bell Tel. Co., 358 NW2d 241 (SD 1984), this Court determined that a similar agreement between a telecommunications company and the PUC was an illegal contract of adhesion.  Rozeboom, 358 NW2d at 242.  In Rozeboom, a citizen operated a business, Rozyâs Electric, out of his home and for years had placed ads in the yellow page section of the local telephone directory.  His yellow page ad was left out in May of 1980.  Rozeboom brought suit claiming $25,000 in damages.  Northwestern Bell had a limitation of liability clause in its contract for directory listings. The contract in Rozeboom provided:
If the Telephone Company shall omit said advertisement or any additional advertising from any issue of its directory, in whole or in part, or shall make errors therein, its liability therefor shall in no event exceed the amount of the charges for the advertising which was omitted or in which the error occurred in such directory issue.  
 
Id.  (emphasis added).  This Court determined that this agreement was a contract of adhesion, that it was unconscionable, and that it should not be enforced as a matter of public policy.  Id. at 242-43.  This Court stated, â[t]he PUC cannot become a body to regulate claims for damages wrought in private contract.  To regulate tariffs, schedules, directories, and listings is one thing, but to adjudicate on monetary rights arising thereunder is conceptually different.â  Id. at 245-46.
[Â¶9.] FirsTelâs inclusion of the tariff filed with the PUC by reference in the contract creates an illegal contract of adhesion, and the contract is unconscionable and unenforceable.  Mobile did not participate in the drafting of FirsTelâs tariff.  Mobile did not negotiate the tariff with either FirsTel or the PUC.  The preprinted form did not even set forth the tariff but merely incorporated all tariffs by reference.  This Court has previously declared that â[o]ne-sided agreements whereby one party is left without a remedy for another partyâs breach are oppressive and should be declared unconstitutional.â  Durham v. Ciba-Geigy Corp., 315 NW2d 696, 700 (SD 1982).  The Legislature cannot constitutionally delegate authority to the PUC to approve tariffs that limit or deny contract and tort remedies.  Rozeboom, 358 NW2d at 246-47; SD Const art VI Â§ 20.
[Â¶10.] FirsTel argues the Rozeboom was narrowly based on the facts of the case, and is therefore inapplicable to the case at bar.  In Rozeboom we acknowledged: 
It is crucial to understand that this case involves an individual versus a monopoly.  We do not have two corporations dealing at arms length nor two individuals dealing at arms length.  We have a factual scenario where the bargaining power is wholly unequal.  As a result of that economic inequality and monopoly of [the phone company], the terms of this contract became substantively unreasonable and should not be enforced.  We do not suggest that simply because this contract is standardized and preprinted, ipso facto, it is unenforceable as a contract of adhesion.  Rather, we hold that the terms of this specific standardized contract are unreasonable, oppressive and therefore unconscionable.
 
Rozeboom, 358 NW2d at 245.
 
[Â¶11.] FirsTel claims that since there are other avenues of advertising available to Mobile, FirsTel should not be liable.  However, it is not rational to claim that a commercial business can compete without listing its telephone number in the telephone directory.  âThe issue . . .  is not whether there are other forms of advertising available but whether such other modes are tied directly to the telephone service enjoyed by almost every home and business in the state.â  Morgan v. South Cent. Bell Tel. Co., 466 So2d 107, 117 (Ala 1985).  Other businesses are faced with full liability for negligence and breach of contract.  FirsTel cannot shield itself from liability by this tariff.
[Â¶12.]  We acknowledge that at the time Rozeboom was decided, the majority of jurisdictions upheld provisions that limited phone companiesâ liability in omitting or erroneously listing numbers or advertisements in a directory.[2]   Id. at 247-48 (Fosheim, C.J., dissenting).  We also acknowledge that eighteen years later, Rozeboom continues to enjoy its minority status.  However, we addressed this precise argument in Rozeboom, stating: 
We fully appreciate that our viewpoint is not the traditional viewpoint in this Nation.  The righteousness of a cause is often solitary and perhaps time will better serve our pronouncement.  In a democratic society, we persevere under a system of laws where change is inevitable. . . . Here, we associate with change rooted in simple fairness and opposed to basic oppression.  
 
Id. at 246.
[Â¶13.] Rozeboom controls.  The tariff provisions unilaterally filed with the PUC and included in the contract by reference that attempts to limit liability created an illegal contract of adhesion and are unenforceable.  Mobile has the right to sue for negligence and breach of contract for the detriment caused to its business.  As this Court declared in Rozeboom, â[j]ustice demands that an aggrieved party reach out and touch the cause of his grievance.â  Id. at 246.
[Â¶14.] Affirmed.
[Â¶15.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.
[Â¶16.] AMUNDSON, Justice, and BASTIAN, Circuit Judge, dissent.
[Â¶17.] BASTIAN, Circuit Judge, sitting for SABERS, Justice, disqualified.
[Â¶18.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.
Bastian, Circuit Judge (dissenting).
[Â¶19.] I respectfully dissent.  I agree that Firstel is not immunized from Mobile's allegations that Firstel acted intentionally and recklessly but I would enforce Firstel's tariff and hold that it applies to Mobile's damage claims for breach of contract and ordinary negligence.
[Â¶20.] This Court's decision in Rozeboom was based on Allen v. Michigan Bell Telephone Co., 18 MichApp 632, 171 NW2d 689 (1969).  In Allen, plaintiff, an insurance agent, signed a contract with defendant, Michigan Bell Telephone Company, to place advertisements in defendant's telephone directory.  At the time, defendant was the sole provider of telephone directories in the area.  When  defendant failed to print the advertisements and plaintiff subsequently sued, defendant argued that a limitation of liability clause in the contract protected it from having to pay damages.  Defendant moved for and was granted summary disposition.
[Â¶21.] On appeal, the Michigan Court of Appeals found that the limitation of liability clause was unconscionable because of plaintiff's lack of options and bargaining power as compared to the defendant.  Id. at 692.  See also Michigan Ass'n of Psychotherapy Clinics v Blue Cross & Blue Shield of Michigan, 101 MichApp 559, 574; 301 NW2d 33, 40 (1980).  The Court's primary concern was that plaintiff was contracting with a public utility which had a monopoly on the type of advertising sought.  Michigan Ass'n of Psychotherapy Clinics, 301 NW2d at 40.  
[Â¶22.] At the time Rozeboom was decided and thereafter, the vast majority of jurisdictions have upheld provisions that limit the liability of telephone companies in omitting or erroneously listing numbers or advertisements in a directory.[3]   Rozeboom and Allen and virtually all other cases with similar holdings were decided before the deregulation of the telecommunication industry.
[Â¶23.] Many of the courts that have upheld limitation of liability clauses have recognized that in providing its service, a telephone company is significantly different from a private business because it must operate under the rules of a state regulatory commission.  
[Â¶24.] A telephone company's duty to provide adequate service is inextricably connected to its rates and expenses, including its potential liability for errors and omissions.  See e.g. Prior v. GTE North Incorporated, 681 NE2d at 773.  It is the responsibility of the state regulatory commission to find a balance among these factors.  Prior v. GTE North Incorporated, 681 NE2d at 773-774.  A tariff merely represents a trade-off between providing customers with a relatively low-cost service and ensuring that the utility will provide reasonably adequate service.  Prior v. GTE North Incorporated, 681 NE2d at 774.
[Â¶25.] The majority essentially holds that Firstel's tariff is unconscionable and unenforceable per se.  The facts of this case, however, differ from those presented in Rozeboom and Allen.  In both cases plaintiffs were private individuals bringing a lawsuit against the Bell Telephone monopoly.  Here, both litigants are corporations and the Bell Telephone monopoly no longer exists.  
[Â¶26.] In Rozeboom the limitation of liability clause completely immunized the telephone company from all legal actions including breach of contract, ordinary negligence, willful and wanton misconduct, and deliberate and intentional conduct.  Here, as noted by the majority, Firstel's tariff does not protect it from Mobile's allegations of intentional and reckless acts.  In Rozeboom and Allen, the defendant was the party that omitted the listing or advertising from its own directory.  Here, the defendant telephone company allegedly failed to properly classify a telephone number which prevented it from being listed in another company's directory.
[Â¶27.] Moreover, Mobile has failed to plead the very facts upon which the holdings in Rozeboom and Allen are essentially based.  Mobile does not allege, for example, that it had no choice but to contract with Firstel.  Mobile does not allege that Firstel holds a monopoly on providing telephone service in the area.  It does not allege that its bargaining power was unequal.
[Â¶28.] Therefore, based on the abundance of legal precedent and the dearth of factual underpinnings I would hold that Mobile's claim for damages for breach of contract and ordinary negligence is subject to and limited by Firstel's tariff. 
[Â¶29.] AMUNDSON, Justice, joins this dissent.

 1.       There is no dispute that the tariff does not insulate FirsTel from Mobile's claim that FirsTel acted intentionally and recklessly.  That claim is analogous to âwillful misconduct,â which is specifically excluded by the terms of the tariff. 

[2] .       For a list of jurisdictions that have previously enforced provisions limiting phone companiesâ liability, see Rozeboom, 358 NW2d at 247-248 (Fosheim, C.J., dissenting).  

 3.       In addition to Rozeboom and Allen, cases that reject exculpatory clauses include Discount Fabric House of Racine, Inc. v. Wisconsin Telephone Co., 117 Wis2d 587, 345 NW2d 417 (1984); Morgan v. South Central Bell Telephone Co., Ala., 466 So2d 107 (1985); and Reuben H. Donnelley Corp. v. McKinnon, 688 SW2d 612 (TexApp 1985); Pigman v. Ameritch Publishing, Inc., 641 NE2d 1026 (IndApp 1994) (overruled 700 NE2d 1128 (Ind 1998).  
 
A majority of tribunals in other states that have addressed this issue have upheld the validity of such clauses: Mendel v. Mountain States Tel. & Tel. Co., 117 Ariz 491, 573 P2d 891 (1977); Robinson Ins. & Real Estate, Inc. v. Southwestern Bell Tel. Co., 366 FSupp 307 (WDArk1973); Davidian v. Pacific Tel. & Tel. Co., 16 CalApp3d 750, 94 CalRptr 337 (1971); University Hills Beauty Acad., Inc. v. Mountain States Tel. & Tel. Co., 38 ColoApp 194, 554 P2d 723 (1976); Ed Fine Oldsmobile, Inc. v. Diamond State  Tel. Co., 494 A2d 636 (Del 1985); Neering v. Southern Bell Tel. Co., 169 FSupp 133 (SDFla1958); Advance Service, Inc. v. General Tel. Co. of Fla., 187 So2d 660 (FlaApp 1966); Southworth & McGill, P.A., v. Southern Bell Telephone and Telegraph Co., 580 So2d (Fla1stDC 1991); Southern Bell Tel. & Tel. Co. v. C & S Realty Co., 141 GaApp 216, 233 SE2d 9 (1977) (overruled in part on other grounds); Georgia-Carolina Brick and Tile Co. v. Brown, 153 GaApp 747, 266 SE2d 531 (1980); McClure Engineering Assocs., Inc. v. Reuben Donnelley Corp. 101 IllApp3d 1109, 428 NE2d 1151 (IllApp 1981) aff'd., 447 NE2d 400; Pinnacle Computer Services, Inc., v. Ameritech Publishing, Inc., 642 NE2d 1011 (IndApp 1995); Prior v. GTE North Incorporated, 681 NE2d 768 (IndApp 1997); Trimble v. Ameritech Publishing, Inc., 700 NE2d 1128 (Ind 1998); Woodburn v. Northwestern Bell Tel. Co., 275 NW2d 403 (Iowa 1979); Holman v. Southwestern Bell Tel. Co., 358 FSupp 727 (DKan1973); Louisville Bear Safety Serv., Inc. v. South Cent. Bell Tel. Co., KyApp 571 SW2d 438 (1978); Wilson v. Southern Bell Tel. & Tel. Co., 194 So2d 739 (LaApp 1967); Baird v. Chesapeake and Potomac Tel. Co., 208 Md 245, 117 A2d 873 (1955); Alpha One v. Nynex Information Resources, 2 MassLRptr 568 (MassSupCt 1994); St Paul Fire & Marine Ins Co v Guardian Alarm, 115 MichApp 278, 283-284; 320 NW2d 244 (1982); All Makes S-V, Inc. v. Ameritech Publishing, Inc., 2001 WL 951381 (MichApp); Ezell v. Bellsouth Telecommunications, Inc., 961 FSupp 149 (SDMiss 1997); Warner v. Southwestern Bell Tel. Co., 428 SW2d 596 (Mo 1968); Tobler's Flowers, Inc., v. Southwestern Bell Telephone Co., 632 SW2d 15 (MoApp 1982); Montana ex rel. Mountain States Tel. & Tel. Co., 160 Mont 443, 503 P2d 526 (1972); Bernstein v. G.T.E. Directories Corp., 631 FSupp 1551 (DNev 1986); Bulbman v. Nevada Bell, 825 P2d 588 (Nev 1992); PK's Landscaping v. New England Tel. & Tel. Co., 128 NH 753, 519 A2d 285 (1986); Federal Building Serv. v. Mountain States Tel. & Tel. Co., 76 NM 524, 417 P2d 24 (1966); Hamilton Employment Serv. v. New York Tel. Co., 253 NY 468, 171 NE 710 (1930); Gas House v. Southern Bell Tel. & Tel. Co., 289 NC 175, 221 SE2d 499 (1976); North Carolina ex rel Utilities Comm. v. Southern Bell Tel. & Tel. Co., 307 NC 541, 299 SE2d 763 (1983); Cunha v. Ohio Bell Tel. Co., 26 Ohio Misc. 267, 271 NE2d 321 (1970); Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co., 279 FSupp 712 (WD Okla1967); Vails v. Southwestern Bell Tel. Co., 504 FSupp 740 (WD Okl 1980); Georges v. Pacific Tel. & Tel. Co., 184 FSupp 571 (DOre 1960); Behrend v. Bell Tel. Co. of Pa., 257 PaSuper. 35, 390 A2d 233 (1978); Pride v. Southern Bell Tel. & Tel. Co., 244 SC 615, 138 SE2d 155 (1964); Pilot Indus. v. Southern Bell Tel. and Tel. Co., 495 FSupp 356 (DCSC 1979); Smith v. Southern Bell Tel. & Tel. Co., 51 TennApp 146, 364 SW2d 952 (1962); Atkin Wright & Miles v. Mountain States Tel. & Tel. Co., Utah, 709 P2d 330 (1985); McTighe v. New England Tel. & Tel. Co., 216 F2d 26 (2dCir1954); Allen v. General Tel. Co. of the Northwest, 20 WashApp 144, 578 P2d 1333 (1978).