**LOUISVILLE BEAR SAFETY SERVICE, INC., Appellant and Cross-Appellee,**

v.

**SOUTH CENTRAL BELL TELEPHONE COMPANY, Appellee and Cross-Appellant.**

Court of Appeals of Kentucky.

Sept. 15, 1978.

Fielden Woodward, Woodward, Hobson & Fulton, Louisville, for appellant and cross-appellee.

James G. Apple, Stites, McElwain & Fowler, William S. Connolly, Gen. Atty., South Central Bell Tel. Co., Louisville, Rexford L. Hawkins, Gen. Atty., South Central Bell Tel. Co., Birmingham, Ala., for appellee and cross-appellant.

Before GANT, COOPER and PARK, JJ.

GANT, Judge.

Appellant, Louisville Bear Safety Service, Inc. (Bear Safety), brought suit for alleged breach of contract and negligence against appellee, South Central Bell Telephone Company (South Central Bell), for a mistake in Bear Safety's advertisement appearing in the Yellow Pages of the 1973 telephone directory. The advertisement consisted of a standard listing of name, address and phone number, all of which were cor-

rect, f⟍ referred to as an "ancho. ⟍ts the reader to the disⱼ Although Bear Safety's ed on Page 462, the ancⱡ it was on Page 461, the e listing itself.

The coⱡ ⱼ₊ₐₘₜ ₊ₛₖₑₐ for $26,440 in compensatory damages and $100,000 in punitive damages. The answer of South Central Bell admitted the mistake but denied any breach of contract or negligence. It further set forth defenses based on the terms of the contract and a disclaimer appearing in the Yellow Pages.

The contract provision: "The telephone company's liability on account of errors and/or omissions of such advertising shall in no event exceed the amount of charges for the advertising which was omitted or in which the error occurred in the then current directory issue, and such liability shall be discharged by an abatement of the charges for the particular listing or advertisement in which the omission or error occurred."

The disclaimer: "The telephone company assumes no responsibility or liability for errors or omissions occurring in the Yellow Pages. Errors or omissions will be corrected in a subsequent issue, if reported by letter to the company."

These two defenses were ordered stricken on motion of Bear Safety.

At trial, the court entered a directed verdict for South Central Bell on the issue of punitive damages and also apparently entered a directed verdict for Bear Safety on the issue of liability, submitting the case to the jury on the issue of compensatory damages only. The jury returned a verdict in the sum of $1,440, the cost of the ad.

■ Bear Safety first alleges that the trial court erred in refusing to instruct the jury on punitive damages. In Kentucky and most other jurisdictions, punitive damages are not recoverable in actions based on contract. *General Accident Fire & Life Assurance Corp. v. Judd,* Ky., 400 S.W.2d 685 (1966). Furthermore, punitive damages are not allowable for negligence unless the action is deliberate, intentional or wanton and malicious in nature. The evidence showed that the error was just that—a typographical or proofreading error with no malice or intentional wrongdoing shown on the part of South Central Bell. Absent this showing, Bear Safety was not entitled to an instruction on punitive damages.

■ The next assignment of error is the refusal of the trial court to admit evidence of the number of other mistakes in the 1973 Yellow Pages and of the revenue received by South Central Bell from Yellow Pages advertising. We see no prejudice to Bear Safety resulting from the exclusion of this evidence and do not feel it is reversible error.

South Central Bell's assignment of error on cross-appeal is the failure of the trial court to instruct the jury that its liability must be limited by the terms of the contract to the amount paid for the advertisement. Bear Safety argues that since South Central Bell was guilty of gross wanton negligence the exculpatory clause of the contract does not apply. Since we have already determined that South Central Bell was not guilty of such conduct, that argument is without merit. Bear Safety further argues, however, that the exculpatory clause is unconscionable, relying on the case of *Allen v. Michigan Bell Telephone Co.,* 18 Mich.App. 632, 171 N.W.2d 689 (1969).

The notion of "unconscionability" is an elusive one. Black's Law Dictionary, Revised 4th Ed., Page 1694, defines an unconscionable contract us "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." The *Allen* case, *supra,* dealing with substantially the same exculpatory clause as before us, dealt with the unfair bargaining position of the parties and the lack of alternatives for the plaintiff. It is quite true that telephone companies are generally monopolies in each service area and that the Yellow Pages are a unique advertising device for which there is no practical substitute, but the situation here is not one of an uninformed consumer and a coercive or fraudu-

lent company. Bear Safety had been ·in business and placing ads in the Yellow Pages for many years and was operating from the status of a knowledgeable businessman. Nowhere is it alleged that Bear Safety was unaware of or did not understand the exculpatory clause when it entered into the contract with South Central Bell. Although it may have had no alternative that would provide exactly the same service at comparable cost, there were other means of advertisement available. Furthermore, the fact that South Central Bell is able to limit its liability through the use of this clause probably contributes to the comparatively low cost of the ads.

The majority of jurisdictions which have had the opportunity to consider this question have differed with the *Michigan* decision, *supra.* Typical of the cases is the following language:

> In summary, the doctrine of unconscionability is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain . . . *Wille v. Southwestern Bell Telephone Co.,* 219 Kan. 755, 549 P.2d 903 (1976).

The exculpatory clause used in the instant case by South Central Bell, when applied to the present facts, falls short of unconscionability. See also *Robinson Insurance & Real Estate, Inc. v. Southwestern Bell Telephone Co.,* 366 F.Supp. 307 (D.C. 1973); *State of Mont. ex rel. Mountain States Telephone & Telegraph Co. v. Dist. Ct. of the 2nd Judicial Dist. of the State of Montana,* 160 Mont. 443, 503 P.2d 526 (1972); *Stuckey v. Southwestern Bell Tel. Co.,* 279 F.Supp. 712 (D.C.1967); *Gas House, Inc. v. Southern Bell Telephone & Telegraph Co.,* 289 N.C. 175, 221 S.E.2d 499 (1976).

In the absence of showing oppressive conditions or manifestly inequitable results, it is our opinion, under the facts of this case, that South Central Bell was entitled to an instruction limiting its liability to the contract amount. However, since the jury returned a verdict for only that amount, this is harmless error.

For the reasons stated above, the judgment of the trial court is affirmed.

All concur.