ELECTRONIC CITATION: 15FED App.0007P (6th Cir.)
File Name: 15b0007p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re: MERV PROPERTIES, L.L.C., )<br><br>Debtor. )<br><br>)<br><br>)<br><br>)<br><br>)<br>MERV PROPERTIES, L.L.C., )<br><br>)<br>Plaintiff-Appellant, )<br><br>)<br>v. )<br><br>)<br>FORCHT BANCORP, INC., )<br><br>)<br>Defendant-Appellee. )<br><br>)<br><br>) | No. 14-8013 |

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky.
Case No. 11-52814, Adv. No. 13-5034.

Decided and Filed: October 6, 2015

Before: HUMPHREY, OPPERMAN, and PRESTON, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ON BRIEF:** John E. Davis, DAVIS LAW OFFICE, Lexington, Kentucky, for Appellant. Douglas T. Logsdon, MCBRAYER, MCGINNIS, LESLIE & KIRKLAND, PLLC, Lexington, Kentucky, for Appellee.

---

**OPINION**

---

**C. KATHRYN PRESTON**, Chief Bankruptcy Appellate Panel Judge.

**OVERVIEW**

MERV Properties, L.L.C. ("MERV"), is a limited liability company formed by four persons for the purpose of purchasing and operating an antique mall.  MERV encountered difficulties paying its mortgage loan with Forcht Bancorp (the "Bank") and entered into a forbearance agreement with the Bank.  Sometime after the forbearance agreement was executed, MERV defaulted, and eventually filed a petition for relief under chapter 11 of the Bankruptcy Code.  Although a plan of reorganization was confirmed, MERV again defaulted on the loan and ultimately the Bank foreclosed its mortgage on the property.  Prior to the bankruptcy case being closed, MERV retained special counsel and filed an adversary proceeding against some of its founders and the Bank.  The claims against the Bank sound in breach of contract, "facilitation of fraud and theft", and equitable subordination of the Bank's claim. MERV also seeks punitive damages.  The Bank filed a motion to dismiss the claims lodged against it, asserting that MERV had executed a release of all of these claims as part of the forbearance agreement.  The bankruptcy court treated the motion to dismiss as a motion for summary judgment, and granted the motion, finding the release valid and enforceable.  MERV timely appealed.

**STATEMENT OF ISSUES**

MERV asserts that the bankruptcy court erred in granting the Bank summary judgment because there were several genuine issues of material fact concerning the validity and enforceability of the forbearance agreement relied upon by the Bank, including (1) whether improper conduct of MERV's agent and others that executed the document should, based on the "adverse interest exception," invalidate the forbearance agreement; (2) whether improper conduct by the Bank in its dealings with MERV should preclude the enforceability of the forbearance agreement; (3) whether an improper relationship and collusion between officers or agents of the Bank and certain members of MERV also should invalidate the forbearance agreement; and

2

(4) whether the forbearance agreement was legally unconscionable. MERV also argues that these issues of material fact could have been more fully demonstrated in its opposition to the Bank's motion had MERV been allowed to pursue discovery.

## JURISDICTION

Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the bankruptcy court. For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and quotation marks omitted). " 'The concept of "finality" in the bankruptcy context,' however, 'should be viewed functionally,' with appellate courts enforcing this threshold requirement 'in a more pragmatic and less technical way in bankruptcy cases than in other situations.' " *Simon v. Lis* (*In re Graves*), 483 B.R. 113, 115 (E.D. Mich. 2012) (quoting *Cottrell v. Schilling* (*In re Cottrell*), 876 F.2d 540, 541–42 (6th Cir. 1989) (internal quotation marks and citations omitted)). *See also Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) ("Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case.") (citation omitted); *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers* (*In re Dow Corning Corp.*), 86 F.3d 482, 488 (6th Cir. 1996) (same principle as *Bullard*).

"An order granting summary judgment for the defendant is a final order." *Buckeye Retirement Co. v. Swegan* (*In re Swegan*), 383 B.R. 646, 649 (B.A.P. 6th Cir. 2008). "A grant of partial summary judgment that does not dispose of all parties and all claims is generally not immediately appealable[.]" *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009). This is such a case, but Federal Rule of Civil Procedure 54(b), made applicable in adversary proceedings by Bankruptcy Rule 7054, permits a bankruptcy court to direct entry of a final judgment as to one or more, but fewer than all, claims or parties upon an express determination that there is no just reason to delay appellate review. *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 442 (6th Cir. 2004). In the case before the Panel, the bankruptcy court entered a proper Rule 54(b)

certification,[1] setting forth the reasons for certification, finding no just cause for delay, and holding that the order granting summary judgment to be final for the purposes of appeal. Accordingly, the Panel has jurisdiction over this appeal.

## STANDARD OF REVIEW

A grant of summary judgment is a conclusion of law and is reviewed de novo. *Med. Mut. of Ohio v. K. Amalia Enters., Inc*., 548 F.3d 383, 389 (6th Cir. 2008); *Anderson v. Fisher* (*In re Anderson*), 520 B.R. 89, 91 (B.A.P. 6th Cir. 2014). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (internal quotation marks and citations omitted). "Under a *de novo* standard of review, the reviewing court decides the issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citing *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001)); *Anderson*, 520 B.R. at 91. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)). "To survive summary judgment, 'the mere existence of a scintilla of evidence in support of a party's position will not suffice.' " *Hirsch*, 656 F.3d at 362 (quoting *Anderson*, 477 U.S. at 252). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

---

[1] Federal Rule of Civil of Procedure 54(b), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 54(a), states that:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

*Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (internal citation and quotation marks omitted).

The separate allegation that the bankruptcy court granted summary judgment prematurely, without allowing adequate time for discovery, is reviewed under an abuse of discretion standard. *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196-97 (6th Cir. 1995).

## FACTS & BACKGROUND

MERV is a Kentucky limited liability company. Its founding members were Roberta Gonzalez (50%), Mark Properties (sole shareholder: Howard Markowitz) (25%), and Eric Friedlander ("Friedlander") (25%). Notwithstanding the membership interests, Friedlander had a 26% voting interest and Gonzalez had a 49% voting interest. Vivian Collins later became a member and received half of Gonzalez's ownership and voting interests. The founding members formed MERV for the purpose of purchasing and renovating an antique mall. MERV obtained a loan from the Bank for this purpose, and granted the Bank a mortgage on the property to secure the loan. Payment of the loan was guaranteed by Gonzalez, Friedlander and his wife Lisa Friedlander, and Mark Properties.

MERV completed the purchase of the antique mall. During the course of renovation, MERV defaulted on its loan with the Bank, whereupon the Bank filed a foreclosure action. To resolve the foreclosure litigation, the parties entered into a forbearance agreement in December 2010. The forbearance agreement contained a broad release by MERV and the guarantors (the "Release") and is of great significance to this appeal. The Release states:

> That in further consideration of the Bank's agreement not to enforce the default terms of the Note for times prior to this Agreement and in further consideration of the Bank's forbearance not to pursue the Lawsuit at this time, Borrower and Guarantors (a) waive and relinquish all defenses to payment and collection of the amounts due Bank and (b) release and forever acquit the Bank . . . from any claims of any nature whatsoever that may have been asserted, whether such defenses or claims arise by virtue of state, federal, bankruptcy, or non-bankruptcy law, by counterclaims, set-offs, deductions and recoupments of Borrower and Guarantors, whether known or unknown, in contract, tort, equity, or otherwise, which Borrower and Guarantors ever had, now have or may hereafter acquire, arising out of, or relating to (i) any transaction or dealings between Bank and Borrower and Guarantors, or (ii) any action or omission to act by Bank occurring prior to the execution of this Agreement.

Forbearance Agreement at ¶11, Dec. 14, 2010, Adv. Case No. 13-5034 ECF No. 6-1 Ex. A.[2] Howard Markowitz signed the forbearance agreement on behalf of MERV as borrower and on behalf of Mark Properties as guarantor. Friedlander, Lisa Friedlander and Roberta Gonzalez also signed as guarantors. Of the signatories, only Lisa Friedlander was not a member of MERV.

MERV filed a chapter 11 bankruptcy petition on October 10, 2011. The bankruptcy court confirmed MERV's chapter 11 plan of reorganization on July 13, 2012. By September 19, 2012, MERV had defaulted on its obligations to the Bank under the plan. Following the default, the Bank foreclosed its mortgage on the antique mall.

On October 4, 2013, MERV commenced an adversary proceeding alleging in the complaint, among other things, fraud and collusion by the Bank and others, including Friedlander, Markowitz and/or companies that Markowitz controlled. The Bank filed a motion to dismiss, asserting that the Release precludes all of the claims MERV had asserted. The bankruptcy court treated the motion to dismiss as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) and Bankruptcy Rule 7012(b). The parties fully briefed the issues and the bankruptcy court held a hearing on the Bank's motion.

To support its legal arguments, MERV provided and relies upon limited evidence in the form of affidavit testimony of James Stepatak and Roberta Gonzalez. In 2009, James Stepatak entered into an agreement with Friedlander to purchase Friedlander's membership interest in MERV. Aff. Of James Stepatak in Supp. Of Pl.'s Resp. to Def.'s, Forcht Bank's, Mot. For Summ. J. ("Stepatak Aff.") at ¶1, Jan. 10, 2014, Adv. Case No. 13-5034 ECF No. 50 Ex. A. However, Stepatak required an opportunity to conduct due diligence prior to finalizing the agreement. In the affidavit submitted by MERV, Stepatak indicates Friedlander misrepresented the rental income of MERV. He further states that Collins believed the loan from the Bank was for $300,000, but Friedlander told him it was $400,000, and that those funds were used for repairs on the property. (The complaint, verified by Collins, states that Collins understood that

---

[2] The record in this appeal is found in the electronic dockets for bankruptcy case no. 11-52814 and adversary case no. 13-5034 (Eastern District of Kentucky) and Bankruptcy Appellate Panel case no. 14-8013 (Sixth Circuit Court of Appeals). Citations to the record will identify the document by name, indicate which case number's electronic docket the document is contained within and the ECF number for the docket entry.

the loan amount was approximately $280,000).[3] Stepatak further states that certain repairs and improvements were not completed, but that the Bank did not raise any questions about these "discrepancies" after inspection of the property. Stepatak describes himself as an "experienced investor in real estate" and states that he previously has obtained construction loans from banks. Stepatak Aff. at ¶4. Based on this experience, he questions why the Bank paid construction draws based on bids rather than receipts. He notes that certain checks to third parties or two-party checks payable to subcontractors were improperly deposited in MERV's bank account with Fifth Third Bank. He opines this was "bad banking practice" and "possibly illegal", and notes the Bank never raised any concern. Stepatak Aff. at ¶5. Based on these concerns with MERV's financial situation and these "several possible irregularities," Stepatak decided not to purchase Friedlander's membership interest. Stepatak Aff. at ¶6. Months later, Friedlander sued Stepatak for breach of contract in state court but that lawsuit was eventually dismissed for lack of prosecution. Finally, Stepatak observes in the affidavit that Collins and Gonzalez were denied access to the room with MERV's business records. MERV repeated this assertion in the complaint.

Gonzalez's brief affidavit is also in the record but provides limited information. Aff. Of Roberta Gonzalez in Supp. Of Pl.'s Resp. to Def.'s, Forch Bank's, Mot. For Summ. J. ("Gonzalez Aff."), Jan. 10, 2014, Adv. Case No. 13-5034 ECF. No. 50 Ex. B. As a member of MERV, she travelled from her home in Nevada to Kentucky to work on the business. However, for personal reasons, she was not able to travel to Kentucky in 2009. She signed the forbearance agreement based on her potential personal liability and assurances of Friedlander. But she suggests that, based on unspecified information that she learned from Collins in 2012, in hindsight, she would not have signed the forbearance agreement had she known these unspecified facts.

The bankruptcy court determined that the Release was valid and enforceable, and the court entered an order granting summary judgment to the Bank. MERV timely appealed.

---

[3] A verified complaint based upon personal knowledge may be considered upon summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Hooks v. Hooks*, 771 F.2d 935, 945-46 (6th Cir. 1985).

On appeal, MERV's primary arguments are that the bankruptcy court erred, first, by effectively prohibiting discovery, and second, by applying an incorrect summary judgment standard. On the second point, MERV argues that, when the evidence is viewed in a light most favorable to MERV, there are genuine issues of material fact regarding the validity of the forbearance agreement and, therefore, the Release. More specifically, MERV asserts that the forbearance agreement was not properly authorized by MERV, that it was induced by fraud, and that it is unconscionable.

## DISCUSSION

I.    MERV Did Not Preserve the Argument that the Bankruptcy Court Granted Summary Judgment Prematurely by Failing to Provide MERV Sufficient Time for Discovery

As a basis to reverse the bankruptcy court's decision, MERV asserts that the bankruptcy court did not provide sufficient time for discovery and the court's decision was therefore premature. Indeed, throughout its briefing, MERV argues what the evidence might have shown had it been allowed sufficient time for discovery.

Parties must be afforded adequate time for discovery prior to a ruling on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 106 S. Ct. 2505, 2511 (1986) (discussing the importance of allowing ample time for discovery); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (same). In evaluating this issue, the Panel looks at the following factors: "(1) when the appellant learned of the issue that is the subject of the desired discovery, (2) whether the desired discovery would have changed the ruling below, (3) how long the discovery period had lasted, (4) whether the appellant was dilatory in its discovery efforts, and (5) whether the appellee was responsive to discovery requests." *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196-97 (6th Cir. 1995) (internal citations omitted).

This issue can be raised on appeal in two ways. One way is the appeal of a specific discovery ruling, such as denial of a motion to extend discovery deadlines. *Id.* at 1196. No such appeal has been taken; MERV did not file any motion seeking more time for discovery. The other way it can be raised is a general claim that the bankruptcy court acted prematurely. *Id.* In order to preserve this type of claim on appeal, MERV was required to file declaration or affidavit showing why, under the record, it cannot present essential facts. *Id.* Fed. R. Civ. P.

56(d) (applicable by Fed. R. Bankr. P. 7056). The Bank served discovery requests while the motion to dismiss was pending in the bankruptcy court. MERV responded to discovery, but never served any requests of its own. During the hearings when the bankruptcy court addressed the motion to dismiss, MERV never requested that the motion be held in abeyance in order to allow further discovery. Moreover, in its brief in opposition to summary judgment, MERV argued that there were genuine issues of material fact, but did not assert that the motion should be denied or delayed on the basis of a lack of discovery. Finally, MERV did not file a motion or a Rule 56(d) affidavit or declaration formally requesting additional time for discovery prior to the court's ruling on the Bank's motion.

The Panel recognizes that MERV raised the issue twice, once in MERV's response to the Bank's original motion to dismiss, and again in its sur-reply to that motion. MERV asserts that the bankruptcy court ignored those objections each time and simply set a new hearing just over thirty days hence. Even assuming such statements could serve as a proper motion or affidavit, such bare statements are not sufficient to prevent summary judgment and to preserve the issue on appeal. In the response to the motion to dismiss, MERV made only the fleeting argument that a ruling on the motion was premature because discovery could change the outcome. The argument in the sur-reply was similar. This type of conclusory statement about the need for discovery is not sufficient to avoid a ruling granting summary judgment. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 489 (6th Cir. 2000).

As MERV failed to file a motion for additional time for discovery or file a Rule 56(d) affidavit or declaration, as required by Sixth Circuit precedent, this issue was waived.

II.     Absent a Recognized Exception, Such as Fraud or Unconscionability, the Release in the Forbearance Agreement is a Valid Contract Between the Bank and MERV

Under Kentucky law, the Release is analyzed under standard principles of contract law:

> A release is a private agreement amongst parties which gives up or abandons a claim or right to the person against whom the claim exists or the right is to be enforced or exercised. That is to say, a release is a surrender of a claimant's right to prosecute a cause of action. In Kentucky, a release is viewed as a contract between the party executing the release and the party being released. A contract, in the absence of a statutory requirement, need not be in writing. As with any valid contract, however, a release must be supported by valuable consideration.

*Waddle v. Galen of Kentucky, Inc.*, 131 S.W.3d 361, 364-65 (Ky. Ct. App. 2004) (internal citations, quotation marks, and footnotes omitted). "Kentucky law [is] clear that, because releases are contractual in nature, courts must apply principles governing the interpretation of contracts when construing a release." *Summers Equip., LLC v. VFS U.S. LLC*, No. 2009-CA001321-MR, 2010 WL 4137434, at *2 (Ky. Ct. App. Oct. 22, 2010) (citing *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2007)).

The Bank was the moving party before the bankruptcy court. Accordingly, the Bank bore the burden of demonstrating that there was no genuine issue of material fact. The Bank asserted that the Release covers all of the claims asserted against it in the complaint. Although MERV conceded that, if valid, the Release covers the claims articulated against the Bank in the complaint, it disputes that the Release is valid and enforceable.

> Under Kentucky law, the Release may be challenged like any other contractual provision:
>
> Generally, release is an affirmative defense that must be pled by the defendant, which includes showing that the release was fairly executed and fairly represented the amount to which the claimant was entitled. *See generally* 5 Ky. Prac. Methods of Prac. § 41:14 (4th ed.2009); 66 Am.Jur.2d Release §§ 40–41; 76 C.J.S. Release § 84 ("The burden of establishing a release is on the party relying on it, but, where a release . . . is established, the opposing party has the burden of proving facts rendering the release void."). . . . After the affirmative defense of release is asserted, the plaintiff may show the invalidity of the release, which can be done by showing mistake, incapacity, fraud, misrepresentation, unconscionability, or duress. *See generally* 5 Ky. Prac. Methods of Prac. §§ 41:4–6; Williston on Contracts § 73:14 (4th ed.).

*Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1108 n.3 (6th Cir. 2010).

The forbearance agreement provided several benefits to MERV in exchange for the Release that constitute valid consideration. Specifically, the Bank delayed foreclosure on the property and dismissed its pending foreclosure lawsuit. The Bank also restructured the loan by reducing the interest rate and extending the payment period on the loan. In exchange, MERV released the Bank from any claims arising from their transactions and executed a confession of judgment. The forbearance agreement was signed on behalf of MERV Properties by Howard Markowitz, acting on behalf of Mark Properties. Additionally, members Eric Friedlander and Roberta Gonzalez signed the forbearance agreement as guarantors. Thus, on its face the

forbearance agreement appears to be a valid contract between the parties, supported by consideration, and the Bank met its initial burden as the movant. As the balance of this decision shows, despite various legal theories it postulates to invalidate the contract, MERV has failed to show that there exists a dispute of material fact as to the validity of the release.

A. The Forbearance Agreement was Signed by Three Members of MERV and the Bank Reasonably Relied on their Apparent Authority to Execute the Forbearance Agreement on Behalf of MERV

Following the Bank's showing that the Release is valid on its face, the burden then shifted to MERV to show that it is not. MERV must offer "more than a mere scintilla of evidence in its favor, . . . and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

With this standard in mind, the Panel must consider MERV's argument that there are genuine issues of material fact concerning the validity of the Release. MERV asserts that there are four reasons why the Release is not valid: (i) the forbearance agreement was not properly executed by at least 51% of its voting members; (ii) Mark Properties and Eric Friedlander could not bind MERV to the forbearance agreement because they had "adverse interests" to MERV; (iii) Forcht Bank committed fraud in the inducement in connection with the forbearance agreement; and (iv) the forbearance agreement is not enforceable because it is unconscionable.

The forbearance agreement was, in fact, signed by three of MERV's four members.[4] These three members constitute over 51% of the voting interest in MERV. The Operating Agreement provides:

> 5.2.3. In lieu of holding a meeting, the Members may vote or otherwise take action by a written instrument indicating the consent of Members holding 51% or more of the Percentages then held by Members.

---

[4] Based on our conclusion that the forbearance agreement has sufficient signatures by a majority of the voting interests of MERV, the Panel finds no need to address the Bank's alternative argument that a single member could bind MERV to the forbearance agreement because it is a transaction undertaken in the ordinary course of business.

Operating Agreement of MERV Props., LLC ("Operating Agreement"), Aug. 27, 2007, Adv. Case No. 13-5034 ECF No. 52-2 Ex. 2. The forbearance agreement is a written instrument, and, by signing as guarantors, Eric Friedlander and Roberta Gonzalez indicated their consent to it. Together, Eric Friedlander, Roberta Gonzalez and Mark Properties, principals of MERV, hold greater than 51% of the voting interests. MERV counters that Friedlander lacked authority to execute the forbearance agreement because his membership interest is in dispute due to his agreement with Stepatak, and that the guarantor's execution cannot suffice for execution by members of MERV.

Even assuming for purposes of argument that MERV is correct that there are issues of fact about Friedlander's actual authority or the propriety of guarantors to execute the agreement as representatives of MERV, those issues are not material, because those signatures show, from the perspective of the Bank, apparent authority and consent to bind MERV to the forbearance agreement. As the bankruptcy court noted, there is no evidence that the Bank received or had knowledge that any member signing the forbearance agreement did not agree to the terms nor was it notified Friedlander's membership or authority was in dispute. Friedlander signed the forbearance agreement, apparently without lodging any objection to doing so. The evidence does not show that the Bank had any reason to believe that the members signing as guarantors were not also approving the forbearance agreement as members of MERV. Indeed, precisely the opposite is true. Mark Properties, through Howard Markowitz, signed the forbearance agreement as a principal for MERV and two of the other three principals of the closely-held limited liability company signed it as well. *See also Kindred Nursing Ctrs. Ltd. P'ship v. Brown*, 411 S.W.3d 242, 249 (Ky. Ct. App. 2011) ("Apparent authority is created when the *principal* holds out to others that the agent possesses certain authority that may or may not have been actually granted to the agent."). The Bank was entitled to rely on the apparent authority of Mark Properties and Howard Markowitz to bind MERV to the forbearance agreement, all supported by the additional assent of Friedlander and Gonzalez. Moreover, it would be rather absurd to believe that Friedlander and Gonzalez would consent and execute the agreement in their capacity as guarantors, while they objected to it in their capacity as members and representatives of MERV.

B.    <u>The Adverse Interest Exception Does Not Apply Because the Forbearance Agreement Benefited MERV</u>

MERV next argues that Friedlander and Markowitz had interests adverse to MERV and, therefore, the actions of those members could not bind MERV to the forbearance agreement. MERV's adverse interest argument is based on an allegation that Friedlander and Markowitz were misusing the loan proceeds for their own benefit rather than for the benefit of MERV.

Generally, the actions of an agent are imputed to the principal.   An exception to that rule lies when the agent has interests adverse to those of his principal:

> It is well settled that a corporation . . . can only act through its agents. *Caretenders, Inc. v. Commonwealth,* 821 S.W.2d 83, 86 (Ky.1991).   The general rule of agency law states that a principal is charged with notice of facts that an agent knows or has reason to know.   *See Illinois Cent. R. Co. v. Fontaine,* 217 Ky. 211, 289 S.W. 263, 267 (1926); *Taulbee v. Hargis,* 173 Ky. 433, 191 S.W. 320, 326 (1917); *see also* Restatement (Third) of Agency § 5.03 ("[N]otice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal....").   This general rule is based upon the presumption that "the agent will do his duty toward his principal and impart to the latter any knowledge which the agent obtains affecting his principal's business...." *Illinois Cent. R. Co.,* 289 S.W. at 267. However, "when there is no foundation for such a presumption, the reason for the rule ceases and it will not be applied." *Id.*   Accordingly, there is a clearly established exception to the rule, commonly referred to as the "adverse interest" exception. *Id.*
>
> The adverse interest exception provides that knowledge of the agent is not imputed to the principal when it is clear that the agent would not communicate the fact in controversy to the principal.   *Id.* at 267–268.   For example, where the communication of a fact would "necessarily prevent the *consummation of a fraudulent scheme which the agent was engaged in perpetrating,*" the agent's knowledge is not imputed to the principal.   *Id.* at 268 (emphasis in the original). Based upon this reasoning, Kentucky's highest court has stated that the general rule of imputation does not apply "when the transaction relates to personal matters of the agent ... and where his interests are adverse to those of his principal...." *Id.; see also* Restatement (Third) of Agency § 5.04 ("[N]otice of a fact that an agent knows or has reason to know is not imputed to the principal if the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person.").

*BancInsure, Inc. v. U.K. Bancorporation Inc./United Kentucky Bank of Pendleton Cnty., Inc.,* 830 F. Supp. 2d 294, 301-02 (E.D. Ky. 2011).   See also *Gold v. Deloitte & Touche LLP (In re*

*NM Holdings Co.),* 622 F.3d 613, 620-21 (6th Cir. 2010) (discussing knowledge of a corporate agent being imputed to the corporation under Michigan law).

However, the adverse interest exception is not applicable when the company actually benefits from the transaction in question. *BancInsure*, 830 F. Supp. at 302-03 (citing *Ohio Valley Banking & Trust v. Citizens' Nat. Bank*, 191 S.W. 433 (Ky. Ct. App. 1917)). MERV does not dispute that at the time the forbearance agreement was executed, it was in default. Nor does MERV dispute that the forbearance agreement reduced the interest rate and extended the time for repayment of the loan. MERV insists that an issue of material fact exists as to whether the forbearance agreement did, in fact, benefit MERV. It appears that MERV is arguing that it would have been better, facing foreclosure, to litigate the same asserted misconduct of the Bank it argues on appeal. But the question is not whether litigating the question of misconduct may have rendered greater benefit to MERV than the forbearance agreement did; the question is whether the forbearance agreement alone rendered any benefit to MERV. The record does not illustrate the existence of a material issue of fact whether the forbearance agreement benefitted MERV. It reflects only that the forbearance agreement did, in fact, benefit MERV. The fact that the forbearance agreement did not ultimately save MERV's business is no different than countless forbearance agreements that precede bankruptcy or foreclosure.

C.    The Record Does Not Evidence That the Bank Facilitated or Colluded with any Fraud or Theft by Members of MERV

MERV also asserts that the Bank facilitated the fraud and theft of Markowitz by its actions. The Sixth Circuit Court of Appeals has discussed the elements of fraud under Kentucky law:

> Under Kentucky law, a party making a fraud claim must prove six elements: The general rule is that to constitute actionable "fraud" it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Sallee v. Fort Knox Nat'l Bank, N.A.* (*In re Sallee*), 286 F.3d 878, 895-96 (6th Cir. 2002) (quoting *McGuffin v. Smith*, 286 S.W. 884, 886 (Ky. 1926)).

MERV asserts that the Bank committed fraud or facilitated Friedlander or Markowitz in their fraud. MERV explains in its reply brief that "MERV does allege that [the Bank] acted in concert with Friedlander and Markowitz by facilitating the waste of MERV's assets in allowing Friedlander and Markowitz to draw down the construction loan proceeds without expending those funds on the repairs and improvements for which those repairs were disbursed. Furthermore, it allowed those construction draw checks to be improperly deposited." Reply Br. of MERV Props., LLC ("Appellant Reply Br.") at 17, Dec. 8, 2014, BAP Case No. 14-8013 ECF No. 26. Essentially, MERV is arguing that the Bank participated in the fraud that Markowitz and Friedlander allegedly perpetrated, despite the fact that the misuse of funds would have reduced the value of the collateral securing the Bank's loan.

This argument does not avail MERV. First, the evidence in this record to support MERV's theory that Markowitz or Friedlander committed fraud, even with reasonable inferences, is very limited. But, more significantly for this appeal, the only evidence of the Bank's role are vague allegations that the Bank failed to follow reasonable banking practices regarding the loan, such as making loan distributions based upon bids rather than receipts; the release of a mortgage on Friedlander's property; and not ensuring each check it issued was indorsed and deposited properly in a different banking institution. MERV has not provided any evidence that the Bank made fraudulent material misrepresentations that MERV relied upon to its detriment. Finally, the record does not show that the Bank was acting as MERV's fiduciary, requiring it to exercise a higher standard of care. Instead, the Bank was required, as in any contract, to act in good faith. *See Farmers Bank & Trust Co. of Georgetown, Kentucky v. Wilmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) ("Within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out.").

In the end, MERV's assertions of what discovery could have shown are no substitute for evidence it failed to elicit through the discovery process which was available to it. The record does not demonstrate an issue of fact whether the Bank facilitated Friedlander's or Markowitz's alleged theft or fraud.

D.      The Forbearance Agreement was Not Unconscionable

Finally, MERV argues that the forbearance agreement, with the Release, constitutes an unconscionable contract and, therefore, is not enforceable.    The legal concept of unconscionability in Kentucky is fact dependent:

> "[T]he notion of 'unconscionability' is an elusive one."  *Louisville Bear Safety Serv., Inc. v. South Central Bell Tel. Co.*, 571 S.W.2d 438, 439 (Ky. Ct. App. 1978).  An unconscionable contract is a contract " 'which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.' "  *Id*. (*quoting* Black's Law Dictionary 1694 (4th ed.1976)).  The doctrine of unconscionability is only used in rare instances, such as when a party abuses its right to contract freely.  *See Id*. (*quoting Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 549 P.2d 903 (1976)).  Further, due to the fact-sensitive nature of unconscionability determinations, courts consider such claims on a case-by-case basis.  *See e.g. Wickliffe Farms, Inc. v. Owensboro Grain Co.*, 684 S.W.2d 17 (Ky. Ct. App. 1984) (applying Kentucky version of the Uniform Commercial Code to find that force majeure clause unfavorable to the plaintiff was not unconscionable).  The doctrine forbids only one-sided, oppressive, and unfairly surprising contracts, and not mere bad bargains.  *Louisville Bear Safety Service, Inc*., 571 S.W.2d at 439.

*Forsythe v. BancBoston Mortg. Corp*., 135 F.3d 1069, 1074 (6th Cir. 1997).

Unconscionability can be separated between procedural and substantive.  "Procedural unconscionability relates to the process by which an agreement is reached and to the form of the agreement."  *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (citing *Schnuerle v. Insight Commc'ns, Co.*, 376 S.W.3d 565, 576−77 (Ky. 2011).  Examples include "fine or inconspicuous print" or "convoluted or unclear language that may conceal or obscure a contractual term."  *Peay*, 406 S.W.3d at 835.  MERV does not argue the forbearance agreement is procedurally unconscionable.   Rather, MERV posits that the forbearance agreement is substantively unconscionable.   "Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent."  *Id*.  In considering substantive unconscionability, the court may consider the commercial reasonableness of the terms of the contract, the purpose and effect of those terms, the allocation of the parties' risk and public policy concerns.  *Id.*

MERV asserts that if Gonzalez or Collins had known that they were giving up possible claims against the Bank in exchange for the delay in the foreclosure of the mall, they would not

have done so and no reasonable person would have. But MERV did not provide more than a scintilla of evidence to support its argument that this contract was unconscionable. Specifically, MERV did not provide evidence that foreclosure was inevitable and that the extension of time just gave Friedlander and Markowitz more time to raid the company's coffers. MERV did not provide evidence that the Bank knew or should have known that Friedlander and Markowitz were raiding the company's coffers. MERV did not even show that, in fact, Friedlander and Markowitz were plundering or pillaging the company's coffers. MERV only presented some isolated facts which it used to argue that such pillaging may have been occurring. It introduced no facts which would support a finding that in fact it was occurring. Thus, MERV asks the Panel to go beyond reasonable inferences and speculate from a paucity of a record to find a triable issue. Neither the bankruptcy court nor this Panel can engage in such speculation.

Of course, it is not unconscionable to give up potential, unknown causes of action in exchange for additional time to rehabilitate a business. Releases are standard in many, if not most forbearance agreements. As the bankruptcy court found:

> The Agreement benefitted MERV because Forcht Bank agreed to forgo immediate entry of a judgment to which Forcht Bank asserts it was entitled, and which MERV does not dispute. In addition the interest rate on the Note was reduced, the payment period extended, the monthly payments lowered, and MERV was given an opportunity to retain its real property and stay in business. It is undisputed that Forcht Bank fully complied with the terms of the Agreement and MERV received benefits from the Agreement.

*MERV Props., L.L.C. v. Friedlander* (*In re MERV Props., L.L.C.*), 2014 WL 801509 at *5 (Bankr. E.D. Ky. Feb. 27, 2014). In sum, MERV did not present evidence to show that there is a genuine issue of material fact for trial on the unconscionability of the forbearance agreement.

### III.    Disallowance of Claim/Equitable Subordination Count

MERV argues that in dismissing Count IX of the complaint (seeking disallowance, or in the alternative, equitable subordination of the claims of the Bank), the bankruptcy court failed to consider the legal standard for equitable subordination or the standard for the disallowance of claims. MERV asserts that the Bank's claim against it is not enforceable due to the Bank's "grossly negligent or willful misconduct in collusion with other defendants." Br. of Appellant MERV Props., LLC ("Appellant Br.") at 27, Oct. 29, 2014, BAP Case No. 14-8013 ECF No. 22.

MERV points out that the bankruptcy court did not conduct any analysis of disallowance of claims or equitable subordination in its opinion. See generally 11 U.S.C. § 510(c) (providing for the equitable subordination of all or part of an allowed claim); *Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.)*, 269 F.3d 726, 744 (6th Cir. 2001) (discussing the three part test for equitable subordination, which requires, among other things, inequitable conduct by the claimant that causes injury).

The Bank asserts that MERV has not preserved this issue on appeal because it was not raised in any of the pleadings or filings in the bankruptcy court, nor was it raised at the hearing before the bankruptcy court. MERV also failed to raise this issue in its Rule 8006 Statement of Issues on Appeal. Additionally, the Bank notes that MERV conceded on several occasions that if the Release were to be deemed valid it would dispose of all of the counts against the Bank in the complaint. "It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997).

It is true that the bankruptcy court's decision did not specifically address this count but the court interpreted the release to cover all counts against the Bank. MERV claims this was beyond the scope of summary judgment. However, the record is clear that the summary judgment motion and oral argument were to address all counts against the Bank, and MERV never explains in its briefing how and when it argued to the bankruptcy court that the Release does not cover Count IX. Nevertheless, it was MERV's obligation to address all legal issues in its opposition to summary judgment as the Bank clearly sought a final disposition of all the claims against it. For these reasons, the Panel finds that MERV's argument that the Release does not cover Count IX was waived.

But even if assuming for argument that that specific argument was not waived, such an action is covered by, and not separate from the broad language in the Release. In addition, for the reasons stated previously, the Panel finds that this record lacks evidence to illustrate an issue of fact whether the Bank engaged in the type of inequitable conduct that could justify such a claim for relief. Compare *White Family Cos. v. PNC Bank (In re Dayton Title Agency, Inc.)*, 527 B.R. 289, 303 (Bankr. S.D. Ohio 2015) (allegations of the bank's conduct not sufficiently

egregious to support an equitable subordination claim). The language in the Release covers any cause of action, including the disallowance of the Bank's claim or equitable subordination to other allowed claims.

## CONCLUSION

Based on the Panel's de novo review, the Panel finds that the Bank offered prima facie evidence of a complete affirmative defense to the complaint by showing that MERV executed a Release of all claims. MERV did not demonstrate a genuine issue of material fact as to the validity of that Release. The bankruptcy court also did not abuse its discretion by ruling on summary judgment despite MERV's asserted need for more discovery when MERV did not file a motion or a Rule 56(d) affidavit or declaration with the bankruptcy court requesting more time for discovery. Accordingly, the bankruptcy court's order granting summary judgment to the Bank is AFFIRMED.