RENDERED: FEBRUARY 9, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1271-MR

RICK S. ROBINETTE                                               APPELLANT

                     APPEAL FROM FAYETTE CIRCUIT COURT
v.                 HONORABLE JULIE M. GOODMAN, JUDGE
                     ACTION NO. 21-CI-02414

MARK C. CARROLL,
INDIVIDUALLY AND AS MEMBER
OF CATAPULT MARKETING, LLC
AND CATAPULT FUNDING, LLC,
AND AS PRESIDENT AND
DIRECTOR OF CARROLL
FOUNDATION, INC.; CARROLL
FOUNDATION, INC.; CATAPULT
FUNDING, LLC; CATAPULT
MARKETING, LLC; AND LUKE A.
CURRY, INDIVIDUALLY AND AS A
MEMBER OF CATAPULT
MARKETING, LLC                                  APPELLEES

OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Rick Robinette (Robinette) appeals from the Fayette Circuit Court's order denying default judgment against several of the defendants named in his complaint as well as the trial court's order finding he suffered no actual damages for any breach of contract. We reverse the trial court as concerns the entry of default judgment against the remaining named defendants but affirm on damages.

## FACTS

Retired coal miner Robinette heard of a lucrative business proposition from other members of his community in Williamson, West Virginia, which lies just across the state line from Pike County, Kentucky. The proposition involved "lending" money to a concern variously known as "Catapult Funding, LLC" or "Catapult Marketing, LLC" (Catapult). In documents contained in the record, Catapult listed Lexington, Kentucky as its place of business. Under the terms of the proffered agreement, any money "deposited" would be used by Catapult to invest in cryptocurrency and other like forms of investments. The "lenders," like Robinette, would receive their investment capital back in six months, along with interest in the amount of 17% per month. It was promised that some of the proceeds would be used by "Catapult" to invest in local community projects, like building a new football stadium at Belfry High School in Pike County. Robinette decided to invest with Catapult.

In January of 2021, Robinette executed a document online by electronic signature.[1] The document was entitled "Catapult Marketing, LLC. Private Loan agreement (sic)." Under the terms of the two-page contract, Robinette as "investor" deposited $84,000 and would receive $155,400 by July 10, 2020. The $155,400 consisted of his initial investment of $84,000 plus interest of $71,400, or 85% of his initial investment. As Robinette later told the trial court, "It sounded too good to be true."

In July of 2020, Robinette did not realize $155,400. Rather, on June 30, 2020, he was convinced to execute a second "loan agreement." This second document was entitled "Catapult Funding LLC. Private Loan agreement (sic)." The terms in this second document indicated Robinette was "depositing" $265,000 and would realize $517,120 at maturity on December 31, 2020. The $265,000 deposit, Robinette explained, was comprised of his initial investment of $84,000, plus the interest he "realized" under the first contract for a total "rollover" of $155,400, plus an additional $109,600 cash which Robinette provided.[2] At this point, Robinette had provided Catapult a total of $193,600 in cash.

---

[1] Robinette testified he never met Mark Carroll or Luke Curry, who were the operators of the various "Catapult" entities, in person.

[2] We note on the face of this second agreement, the amount of the "deposit" is variously listed as $265,000 and $256,000. There is no reason to believe Robinette ever noted the discrepancy.

Before the maturity date of the second agreement, Robinette informed Catapult he would be withdrawing $135,000 and allowing the remainder of his "investment" to form the basis of a third agreement.[3] He did receive $35,000 from Catapult but did not receive the other $100,000 he requested. Despite this failure, on January 1, 2021, the parties entered into the third and last agreement. This agreement was again entitled "Catapult Funding LLC. Private Loan agreement (sic)." By its terms, Robinette was "depositing" $400,000 on January 1, 2021, and would realize in June of 2021 a return of $808,000, erroneously deemed a 100% interest rate.

After the June 30, 2021, maturity date, despite repeated demands, Catapult failed to pay Robinette the $808,000 he was due under the terms of the agreement. Robinette engaged counsel and Catapult ultimately provided him with $182,500. Along with the $35,000 already received, Robinette managed to recover $217,500 from Catapult. As he only provided cash in the amounts of $84,000 and $109,600, totaling $193,600, Robinette realized a return on his investment of $23,900.

---

[3] According to the complaint, Robinette expected the remaining "principal and interest" to remain after he received $135,000 to be $400,000. There is no explanation for where he arrived at this figure as if he "realized" $517,120 after the maturity of the second agreement and withdrawn $135,000, the remainder would be only $382,120.

Robinette filed suit in Fayette Circuit Court, naming Catapult Marketing, LLC, Catapult Funding, LLC, Mark C. Carroll, Carroll Foundation, Inc.,[4] and Luke Curry. Robinette alleged breach of contract because he did not receive the $808,000 per the terms of the last agreement. He also alleged fraud, averring Carroll and Curry induced him and others to "loan" cash to the Catapult entities by falsely promising exorbitant rates of return and guaranteeing payment of principal and interest. Robinette also sought pre- and post-judgment interest.

No answers to the complaint were filed. Robinette sought default judgment against all named defendants. The trial court, reviewing the agreements executed by Robinette, entered default judgment only against Catapult Funding, LLC, the entity listed on the final agreement. As to the remaining named defendants, the court's order held it denied "the motion as to the remaining Defendants, as the Contract produced by the Plaintiff does not indicate liability on the part of any of the other Defendants for any damages on that contract." The order did not mention the other claims raised in the complaint, such as fraud.

A hearing on damages was held by the court on April 12, 2022, for the breach of contract claim against Catapult Funding, LLC. The plaintiff entered into evidence the three written agreements. Robinette also introduced receipts from

---

[4] In the complaint, this entity is listed as both a corporation and an LLC. Its only connection to the case is Mark Carroll, and it was named as an alter ego of Carroll.

withdrawals from his bank accounts to prove the "deposits" he made under the agreements. Robinette was the only witness and he was seeking what he was due under the third agreement – $808,000.

During the hearing, the trial court asked Robinette if he were contacted by any law enforcement agencies which might be investigating the matter. Robinette told the trial court the FBI[5] contacted him about the situation and used the term "Ponzi scheme."[6]

Following the hearing, the judge allowed counsel to brief damages as once she determined Robinette recovered all he invested, and realized $23,900 in

---

[5] We take judicial notice under Kentucky Revised Statute (KRS) 201 that Carroll and Curry were indicted in federal court for the scheme in May of 2023. *United States of America v. Mark Carroll and Luke Curry*, No. 23-CR-50020; *Two Kentucky Men Charged With Scheming To Obtain Millions of Dollars From Victims in Illinois and Throughout the U.S.*, UNITED STATES ATTORNEY'S OFFICE, https://www.justice.gov/usao-ndil/pr/two-kentucky-men-charged-scheming-obtain-millions-dollars-victims-illinois-and (last visited February 8, 2024).

[6] *Black's Law Dictionary* (11th ed. 2019), defines a *Ponzi scheme* as follows:

> A fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, usu[ally] without any operation or revenue-producing activity other than the continual raising of new funds. This scheme takes its name from Charles Ponzi, who in the late 1920s was convicted for fraudulent schemes he conducted in Boston. *Cf.* PYRAMID SCHEME; GIFTING CLUB.

gains, she did not believe Robinette had suffered any actual damages. After counsel filed a brief on damages, the trial court issued its order.

The trial court determined the agreement between the parties, even though it was referred to as a "loan" in the documentation, was an investment vehicle. While the court realized it must respect the "expectations of the parties in determining interest to be charged on a loan[,]" those expectations must be realistic and not unconscionable. The return of over 100% interest as stated in the last agreement was unconscionable, the court determined. The court ruled any reasonable investor would realize the vehicle was potentially a Ponzi scheme, so a reasonable investor would proceed at his own risk. As Robinette realized $23,900 from his participation, she found he suffered no actual damages under the contract. Robinette filed a motion to reconsider, which was denied.

Robinette appeals both from the trial court's order denying default judgment against any of the defendants except "Catapult Funding, LLC" for breach of contract and the trial court's order finding he suffered no actual damages for any breach of the contract by "Catapult Funding, LLC." We reverse as to the entry of default judgment against the balance of the named defendants but affirm as to the finding on damages as against Catapult Funding, LLC.

## STANDARD OF REVIEW

A trial court's determination of a motion for default judgment and its

assessment of damages after entry of default judgment on liability are both

reviewed for an abuse of discretion.

> A trial court has broad discretion when it comes to
> default judgments, and we will not disturb a default
> judgment unless the trial court abused that broad
> discretion. *S.R. Blanton Development, Inc. v. Investors
> Realty and Management Co., Inc.*, 819 S.W.2d 727, 730
> (Ky. App. 1991). For a trial court to have abused its
> discretion, its decision must have been arbitrary,
> unreasonable, unfair or unsupported by sound legal
> principles. *Clark v. Commonwealth*, 223 S.W.3d 90, 95
> (Ky. 2007).

*First Horizon Home Loan Corp. v. Barbanel*, 290 S.W.3d 686, 688 (Ky. App.

2009).

"Notwithstanding that a default judgment has been entered, the law

still requires a legal basis to support a damages claim. . . ." *Deskins v. Estep*, 314

S.W.3d 300, 304 (Ky. App. 2010).

## ANALYSIS

Robinette first complains the trial court abused its discretion in failing

to enter default judgments against Catapult Marketing, LLC; Mark C. Carroll,

individually; Luke A. Curry, individually; and Carroll Foundation, Inc. on all

claims, as well as against Catapult Funding, LLC as to his claim against the entity

for fraud. We agree with Robinette. He was entitled to default judgment against

each entity on his claim of fraud and against the four remaining defendants for the claim of breach of contract.

CR[7] 55.01 provides a defendant cannot thwart justice by refusing to answer a lawsuit properly filed against it.

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply to the court therefor. If the party against whom judgment by default is sought has appeared in the action, he, or if appearing by representative, his representative shall be served with written notice of the application for judgment at least three days prior to the hearing on such application. The motion for judgment against a party in default for failure to appear shall be accompanied by a certificate of the attorney that no papers have been served on him by the party in default. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court, without a jury, shall conduct such hearings or order such references as it deems necessary and proper, unless a jury is demanded by a party entitled thereto or is mandatory by statute or by the Constitution. A party in default for failure to appear shall be deemed to have waived his right of trial by jury.

CR 55.01.

We understand default judgment should be entered advisedly. We "realize that default judgments are not looked upon with favor as it is the policy of

---

[7] Kentucky Rule of Civil Procedure.

the law to have every case decided on its merits." *Dressler v. Barlow*, 729 S.W.2d 464, 465 (Ky. App. 1987) (citing *Ryan v. Collins*, 481 S.W.2d 85 (Ky. 1972); *Mullins v. Commonwealth*, 262 S.W.2d 666 (Ky. 1953)). The administration of justice requires when a defendant, properly and duly served under the civil rules of procedure, fails to respond as required, the plaintiff is entitled to judgment so as not to allow inaction to thwart justice. If there were no consequences to failure to answer a lawsuit, the administration of justice would grind to a halt. *See Hutcherson v. Hicks*, 320 S.W.3d 102, 105 (Ky. App. 2010) ("The desirability of finality in judgments of any court requires this.") (citation omitted).

Kentucky is not alone in approaching the entry of default judgments with caution. The intermediate appellate court in Kansas has acknowledged the disfavor with which default judgments are considered but acknowledges that the inaction of a defendant cannot be allowed to thwart justice. "Default judgments are not favored by the law but are necessary when the inaction of one party frustrates the administration of justice. *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978)." *First Management, Inc. v. Topeka Inv. Group, LLC*, 47 Kan. App. 2d 233, 239, 277 P.3d 1150, 1156 (2012).

Missouri's Court of Appeals also expressed disfavor with default judgments but acknowledged they are a necessity borne out of the inaction of a party.

-10-

And we recognize the important policies favoring the resolution of lawsuits on the merits and disfavoring default judgments. *See Dozier v. Dozier*, 222 S.W.3d 308, 311 (Mo. App. W.D. 2007). Those policies, however, must be considered together with the countervailing and fundamental policy on which the administration of justice rests – that parties obey and respect orders of the court to appear or respond or otherwise to take some action. *See Stradford v. Caudillo*, 972 S.W.2d 483, 486 (Mo. App. W.D. 1998) ("When a litigant chooses to ignore or act in reckless disregard of the rules and procedures set out for the orderly administration of the judicial process, he cannot then be heard to complain when he receives no relief under its rules, particularly Rule 74.05(d).").

*Plasmeier v. George*, 575 S.W.3d 485, 488 (Mo. Ct. App. 2019).

Indiana, too, has acknowledged the need to have such methods as default judgment in place to ensure that the system of justice runs efficiently. "Courts must balance the need for efficient administration of justice with the preference for deciding cases on their merits and giving a party its day in court." *Flying J, Inc. v. Jeter*, 720 N.E.2d 1247, 1249 (Ind. App. 1999).

In the present case Robinette filed a motion for default judgment against all defendants named in his complaint on all claims forwarded after none of them filed an answer to his complaint. Counsel indicated in a certificate[8] appended

---

[8] "A party seeking a judgment by default under CR 55.01 shall file a written motion therefore. The motion shall be accompanied (a) by a certificate of the attorney that no papers have been served upon the attorney by the party in default . . . ." Rule 20, Fayette Circuit Criminal and Civil Court Rules.

-11-

to the motion he received no answer served on him by any of the parties.[9]

Robinette was entitled to default judgment as to all entities named in his complaint.

The trial court gave limited justification in its order granting default judgment only against Catapult Funding, LLC, citing "as the Contract produced by the Plaintiff does not indicate liability on the part of any of the other Defendants for any damages on that contract." We find this to be an abuse of discretion.[10] Robinette alleged other causes of action against the named defendants, such as fraud, not dependent upon privity of contract. It was an abuse of discretion not to enter judgment against each named party on each claim as none of the parties answered any of the claims forwarded in the complaint.

A default judgment cannot be entered when a complaint fails to state a claim upon which relief can be granted. *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). However, leniency is warranted in construing the pleadings in such a circumstance. *See Jeffrey v. Jeffrey*, 153 S.W.3d 849, 851 (Ky. App. 2004);

---

[9] Counsel did indicate in the motion for default judgment Mark Carroll emailed him on November 22, 2021, and counsel included the text of the email in the motion out of an abundance of caution. The email did not suffice to constitute either an answer or an appearance. *See Ryan v. Collins*, 481 S.W.2d 85, 88 (Ky. 1972). The email counsel received from Carroll indicated an answer would be "sent" within ten (10) business days, but no document was either "sent" or "filed."

[10] "Although default judgments are not favored, trial courts possess broad discretion in considering motions to set them aside and we will not disturb the exercise of that discretion absent abuse. *Kidd v. B. Perini & Sons*, 313 Ky. 727, 233 S.W.2d 255 (1950)." *Howard v. Fountain*, 749 S.W.2d 690, 692 (Ky. App. 1988).

-12-

*Crowder v. American Mutual Liberty Ins. Co.*, 379 S.W.2d 236, 238 (Ky. 1964). There is nothing in the trial court's order denying default judgment to suggest it found the plaintiff failed to state a claim against any of the defendants; the trial court apparently wholly disregarded the fraud claim, which we find was an abuse of discretion.

When a defendant fails to respond to a complaint and does not enter an appearance in any way, the plaintiff is entitled to default judgment unless the trial court can point to some defect in the complaint or with its jurisdiction over the claims therein. The Fayette Circuit Court having done neither on the claim for fraud, we reverse and remand for entry of default judgment on the fraud claims against all defendants.[11] A damages hearing must be held by the circuit court on this claim on remand, pursuant to CR 55.01 and 52.01.[12]

---

[11] Given the trial court's determination Robinette was not damaged on the breach of contract claim, it is unnecessary to reverse its ruling on default judgment on that claim against Catapult Marketing, LLC, Carroll Foundation Inc., Mark Carroll, and Luke Curry. Further, the trial court did hold the only defendant signatory to the third agreement was the entity against which it granted default judgment, Catapult Funding, LLC, which we hold was not in error.

[12] "CR 55.01 clearly contemplates that damages hearings in cases where a default judgment for liability has been entered should be evidentiary in nature to determine the amount of damages and establish the truth of any other allegations or evidence supporting the damage claim. Kentucky Courts have concluded that proceedings of this nature are governed by CR 52.01. *Greathouse v. Am. Nat'l Bank & Trust Co.*, 796 S.W.2d 868 (Ky. App. 1990). The provisions in CR 52.01 are mandatory and require the court to make specific findings of fact and separate conclusions of law before rendering a judgment. *Brown v. Shelton,* 156 S.W.3d 319 (Ky. App. 2004)." *Deskins*, 314 S.W.3d at 304.

Robinette further appeals from the trial court determination that he suffered no actual damages. The trial court granted default judgment against Catapult Funding, LLC on the breach of contract claim, as it was the entity listed as party to the third agreement and held a damages hearing. The trial court determined Robinette suffered no actual damages under the agreement. We agree.

We find the trial court did not abuse its discretion in holding Robinette did not suffer any actual damages under the contract. The trial court found, as a matter of law, the contract term calling for over 100% "interest" be paid to Robinette for his "loan" of $400,000 was unconscionable. The court cited *Conseco Finance Servicing Corporation v. Wilder* for the proposition "[a]n unconscionable contract has been characterized as 'one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'" 47 S.W.3d 335, 342 (Ky. App. 2001) (citing *Louisville Bear Safety Service, Inc. v. South Central Bell Telephone Company*, 571 S.W.2d 438, 439 (Ky. App. 1978) (citing *Black's Law Dictionary* (Rev 4th ed.))).

It was not reasonable, the court held, for Robinette to anticipate realizing over a 100% return on his deposit. We cannot hold this finding to be an abuse of discretion.

The court also found Robinette deposited a total of $193,600 with Catapult and recovered $217,500, a difference of $23,900, representing a 12.3% return on his deposit. The court found this amount a reasonable return on an investment, which the court found this agreement was, despite the characterization of it describing a "loan." The expectation of an over 100% interest rate were this scheme a "loan," as Robinette insists it was, would be unconscionable and unenforceable. Again, we find no abuse of discretion in the court's determination.[13]

## CONCLUSION

The Fayette Circuit Court erred in denying Robinette default judgment against all named defendants. We reverse the court and remand this matter back to the Fayette Circuit Court for further proceedings in accordance with this Opinion. The court did not err in determining Robinette was not entitled to recover per the terms of the clearly unreasonable agreement which indicated he would realize over 100% interest on money deposited with Catapult. The Fayette Circuit Court is affirmed in part, reversed in part, and this matter is remanded.

---

[13] Whether Robinette will retain $23,900 is not for us or the Fayette Circuit Court to determine. Rather, the federal indictment of Carroll and Curry may well speak to whether Robinette, as a "net winner" in the Ponzi scheme, will be made to forfeit this amount. *See generally* 23 A.L.R.7th Art. 4 (Originally published in 2017). For an example of such a "claw back" recovery suit, *see Kelley as Trustee for PCI Liquidating Trust v. Boosalis*, 974 F.3d 884 (8th Cir. 2020).

ALL CONCUR.


BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEES.

Darrell E. Sammons
Erlanger, Kentucky